## COMMONWEALTH *vs.* BRIAN M. ROCHE.

No. 97-P-0227.

Norfolk. September 8, 1997. - March 6, 1998.

Present: BROWN, SMITH, & LENK, JJ.

*Jury and Jurors. Practice, Criminal,* Challenge to jurors. *Constitutional Law,* Jury. *Battered Woman Syndrome. Evidence,* Expert opinion, Prior misconduct. *Witness,* Expert.

Discussion of cases considering the exercise of peremptory challenges during jury empanelment and the procedures to be followed where the exercise of a peremptory challenge is the subject of an objection. [375-377]

At the trial of indictments in which both the defendant and the victim were white, the judge made no finding that the defendant's peremptory challenge to the only black person on the venire constituted a prima facie showing of impropriety and further erred in failing to determine whether defense counsel's articulated reason was bona fide or a sham: where the stated reason was a specific reference to the prospective juror (her occupation) and was not based on the juror's group affiliation, the judge's disallowance of the challenge was reversible error. [377-379]

At the trial of indictments in which it was alleged that the defendant assaulted his former girlfriend on two occasions, the judge erred in allowing an expert to testify regarding the profile of a typical "abusive male." [379-380]

At the retrial of indictments, the judge should make a determination whether evidence of the defendant's prior bad acts should be admitted in evidence and, if so, to what extent. [380-381]

INDICTMENTS found and returned in the Superior Court Department on February 15, 1994.

The cases were tried before *James D. McDaniel, Jr.,* J.

*Charles W. Rankin (Catherine J. Hinton* with him) for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant, Brian Roche, was the subject of several indictments that arose out of two incidents involving alleged assaults on his former girlfriend. The first incident alleg-

edly took place sometime between June 1 and July 1, 1992, in Quincy, the second on January 6, 1994, in Weymouth. As a result of the 1992 incident, the defendant was charged with assault and battery by means of a dangerous weapon (shod foot) and also assault and battery. With regard to the January 6, 1994, incident, the defendant was charged with unarmed burglary, attempted murder, assault and battery, and malicious destruction of property. After a trial, a jury found the defendant guilty of the above charges.[1]

On appeal, the defendant asserts several grounds for reversal. We conclude that the trial judge committed reversible error in denying the defendant the right to exercise a peremptory challenge. We also briefly consider those issues which may arise at retrial.

1. *Facts.* The complainant and the defendant first met in 1983, at which point they dated a few times. They did not see each other again until 1986, when they began a relationship that continued until January 6, 1994. On that date, at 8:00 P.M., the complainant opened the front door of her apartment building and let in the defendant. As she started up the stairs to her second-floor apartment, the defendant, who was behind her, said, "I smell a whore." Once inside the apartment, the defendant hit, punched, and kicked the complainant. He threw her to the floor and placed his hands on her throat until she nearly lost consciousness. The defendant finally left the complainant's apartment.

Minutes later, the complainant heard a commotion at her front door. She saw the defendant and heard him yelling and swearing at her to open the door. The complainant telephoned the police. She ran into the bathroom and locked the door. The defendant pushed in her front door, kicked in the bathroom door, grabbed the complainant and beat her.

The police arrived and found the apartment to be in disarray. The furniture was overturned, a broken telephone was on the floor, and there was a hole in a wall. The complainant told the police that she had been assaulted. She had bruises on her face and fingermarks on her neck. The defendant told the police that there was "no problem."

---

[1]The defendant was found not guilty of an assault and battery that allegedly occurred in 1991 in Weymouth and also found not guilty of an assault and battery that allegedly occurred in 1991 in Cohasset. The Commonwealth entered a nolle prosequi on a second charge of malicious destruction of property arising from the January 6, 1994, incident.

The defendant testified that on January 6, 1994, he brought the complainant some lobsters at her request. He then left the apartment to do some errands. When he returned he saw the complainant with cocaine and they argued. When the defendant tried to throw the cocaine into the toilet, the two struggled. The defendant denied that he kicked, punched, or tried to strangle the complainant. After he flushed the cocaine down the toilet, he left the apartment. The defendant returned because he realized that his dog was still there. The complainant would not let him in and, according to the defendant, threatened to kill the dog. The defendant broke down the door in order to get his dog.

The complainant also testified that, in 1992, the defendant kicked and beat her — acts which were the subject of indictments that were being tried with the indictments charging the defendant with the 1994 assaults. Hospital records concerning the complainant were also introduced in evidence. In regard to the 1992 incident, the defendant denied that he hit the complainant.

The complainant was also allowed to testify as to other assaults committed upon her by the defendant in 1988 and 1989 — acts for which the defendant was not charged. Two doctors testified about the injuries received by the complainant as a result of the 1988 assault. Those injuries included a fracture of the fifth cervical vertebra and an orbital fracture. Several other witnesses, including the defendant, also testified about the prior assaults. The complainant's hospital records from 1988 were also introduced in evidence. In regard to the 1988 assault, the defendant testified that he saw the complainant at a club; she had white powder on her nose and was "wobbly"; the defendant and the complainant's companion got in a fight; the complainant got in the middle of the fight; and the defendant hit the complainant by accident. We now discuss the empanelment issue.

2. *Denial of peremptory challenge.* Both the defendant and the complainant are white. During the course of the jury empanelment, the judge denied the defendant's peremptory challenge of a prospective juror who was black. The defendant claims that the judge committed reversible error by denying his right to exercise the peremptory challenge.

After the defendant challenged the prospective juror, the judge, on his own, inquired of defense counsel, "Why?"

Defense counsel responded, "She is a nurse." The judge then stated, "I don't care. She is the only black juror on the panel." Defense counsel acknowledged that to be true. The judge then stated, "I am not going to accept that challenge." Defense counsel objected.

A short time later, still during the empanelment process, the judge called a side bar conference. The following took place:

| | |
|---|---|
| THE COURT: | "Just so the record is clear, I find that your reason given to excuse that juror is not a good one on the basis and fact that this is the only black juror not only sitting on the panel but the entire venire. The Commonwealth and the defendant have the right to a fair and impartial trial but not by an all white jury. I want that on the record." |
| DEFENSE COUNSEL: | "I would like this on the record, that her race had absolutely nothing to do with it. As a matter of fact, I go out of my way to have black jurors." |
| THE COURT: | "Well, then, you shouldn't be offended then." |
| DEFENSE COUNSEL: | "But I don't want anyone with a medical background on the jury. We are going to have doctors testify." |
| THE COURT: | "Yes." |
| DEFENSE COUNSEL: | "We are going to have medical reports they are going to try to put in. I do not want anyone with a medical background on it. That's it." |
| THE COURT: | "And I want to see a fair and impartial jury, too." |
| DEFENSE COUNSEL: | "Well, [note] my objection again." |

"While not explicitly guaranteed by the Federal Constitution or the Constitution of this Commonwealth, the purpose of peremptory challenges is to aid in assuring the constitutional right to a fair and impartial jury." *Commonwealth* v. *Green,* 420

Mass. 771, 776 (1995). "Traditionally, the latitude allowed in the exercise of peremptory challenges is wide: 'The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control.' " *Commonwealth* v. *Wood*, 389 Mass. 552, 560 (1983), quoting from *Commonwealth* v. *Soares*, 377 Mass. 461, 484, cert. denied, 444 U.S. 881 (1979). However, the exercise of a peremptory challenge is not without limitation because art. 12 of the Declaration of Rights does not allow "the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community." *Commonwealth* v. *Soares*, 377 Mass. at 486. Therefore, the exercise of certain peremptory challenges may be challenged and thus come under the scrutiny of the trial judge.

In order to "minimize the necessity for lengthy appellate examinations and retrials springing from confusion over jury selection," *Commonwealth* v. *Curtiss*, 424 Mass. 78, 81 (1997), the court in *Commonwealth* v. *Soares*, *supra*, established a procedure, later refined in *Commonwealth* v. *Burnett*, 418 Mass. 769, 770 (1994), that must be followed in those cases where the exercise of a peremptory challenge is the subject of an objection.

The procedure outlined in *Soares* is as follows: Peremptory challenges are presumed to be proper but the presumption is rebuttable on a showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within a group. *Commonwealth* v. *Soares*, *supra* at 490. Although *Soares* states that there must be a showing of a pattern, the court later ruled that "the challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety." *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), *S.C.*, 425 Mass. 237, cert. denied, 118 S. Ct. 636 (1997).

"Confronted with a claim that a peremptory challenge is being used to exclude members of a discrete group, the judge must 'determine whether to draw the reasonable inference that peremptory challenges have been exercised so as to exclude individuals on account of their group affiliation.' " *Com-*

*monwealth* v. *Curtiss, supra* at 80-81, quoting from *Commonwealth* v. *Soares, supra* at 490.[2]

If the required showing of impropriety is made by the opposing party, the burden shifts back to the party exercising the peremptory challenge "to provide a 'group neutral reason' for the challenge." *Commonwealth* v. *Sarourt Nom,* 426 Mass. 152, 155 (1997), quoting from *Commonwealth* v. *Burnett, supra* at 771. "This reason need not be as specific as that required to justify a removal for cause, but general assertions are insufficient. . . . Rather, the challenging party 'must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenge[].' " *Commonwealth* v. *Sarourt Nom,* 426 Mass. at 155, quoting from *Commonwealth* v. *Burnett, supra* at 771, quoting from *Batson* v. *Kentucky,* 476 U.S. 79, 98 n.20 (1986). The reason must be "personal to the juror and not based on the juror's group affiliation." *Commonwealth* v. *Young,* 401 Mass. 390, 401 (1987).

In *Commonwealth* v. *Burnett, supra* at 771, the court added two requirements to the *Soares* procedure. They are that once a claim of improper peremptory challenges is made, either by the opposing party or by the judge, sua sponte, the judge should (1) "make a finding as to whether the requisite prima facie showing of impropriety has been made" and (2) "specifically determine[] whether [the reasons advanced by the exercising party] were bona fide or a mere sham." *Commonwealth* v. *Burnett, supra* at 771. *Commonwealth* v. *Curtiss, supra* at 81.

The Commonwealth argues that the judge did not err in denying the defendant's peremptory challenge because the judge followed the practice endorsed by the court in *Commonwealth* v. *Curtiss.* We do not agree.

The facts in *Curtiss* do bear some similarity to those in the present case but there are also important differences. In both cases, defense counsel exercised a peremptory challenge to the only black prospective juror on the panel and in the entire venire. However, *Curtiss* involved an interracial sex crime; a white defendant was accused of raping a black woman. The judge in that case was warranted in believing from the nature of

---

[2]It is not necessary that an objection to a peremptory challenge come from the Commonwealth or the defendant because a judge, on his own, may investigate such a challenge, as the judge did here. See *Commonwealth* v. *Curtiss,* 424 Mass. at 80, and *Commonwealth* v. *Wood,* 389 Mass. at 560 n.9, where the judges acted on their own.

the case, and from the fact that the victim and the challenged black juror shared a common group membership, that a prima facie showing of an impropriety had been established. Here, the matter did not involve an interracial crime; both the complainant and the defendant were white and did not share a common group membership with the challenged black prospective juror. In these circumstances, the judge should have made a finding before requiring defense counsel to supply a reason for his peremptory challenge. While a challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety, such a peremptory challenge does not, by itself, constitute a prima facie showing of impropriety in *all* circumstances.[3] To hold otherwise would unduly prolong trials and render peremptory challenges meaningless.[4]

Finally, even if the judge was warranted in finding impropriety and requiring defense counsel to articulate a race-neutral reason for his challenge, the judge committed error in failing to determine whether the offered reason was bona fide or a sham. *Commonwealth* v. *Burnett*, 418 Mass. at 771.

The race-neutral reason offered by defense counsel as the basis for the peremptory challenge was that the black prospective juror was a nurse and the Commonwealth had indicated that it would be offering the testimony of doctors and placing the complainant's hospital records in evidence in regard to the various assaults. Defense counsel stated that he did not want

---

[3]For example, in *Commonwealth* v. *Harris*, 409 Mass. 461, 462-468 (1991), and in *Commonwealth* v. *Fryar*, *supra* at 735-741, the defendants were black persons and the prosecutors exercised peremptory challenges to the only black persons on the panel and in the entire venire. In both decisions, the court held that a sufficient showing of impropriety had been made.

In this case, the only factor triggering the judge's inquiry was that the challenged prospective juror was the only black person on the panel and in the venire.

[4]In *Commonwealth* v. *Curtiss*, 424 Mass. at 81, the judge first noted that the challenged prospective juror was the only black person on the panel and in the venire and then asked defense counsel for his reasons for the challenge. Here, the judge immediately required defense counsel to provide his reason for exercising the peremptory challenge without giving counsel an explanation for his inquiry until *after* counsel had stated his reasons for the challenge.

Because the nature of a peremptory challenge is that it is exercised without having counsel state a reason for the challenge, a prima facie finding of impropriety should be made *before* requiring counsel to state a reason for the challenge.

anyone with a medical background on the jury. The stated reason was a specific reference to the prospective juror "and not based on the juror's group affiliation." *Commonwealth* v. *Young*, 401 Mass. at 401. The judge made a finding that the "reason given to excuse the juror is not a good one on the basis and fact that this is the only black juror not only sitting on the panel but the entire venire." The judge never stated whether the offered reason was a sham.[5] Rather, the judge's statement supports an inference that he sought to construct a demographically representative jury by accepting some peremptory challenges and rejecting others. "[T]he right to a jury representative of a cross section of the community cannot require that each jury include constituents of every group in the population." *Commonwealth* v. *Soares*, 377 Mass. at 481. The judge cannot ignore the *Soares-Burnett* decisions in an attempt to reach that goal.[6]

Because the erroneous disallowance of a peremptory challenge is reversible error without a showing of prejudice, there must be a new trial. *Commonwealth* v. *Green*, 420 Mass. at 776.

3. *Admission of batterer's profile evidence.* Over the

---

[5]In *Commonwealth* v. *Curtiss*, *supra* at 82, the judge rejected the defendant's reason, stating: "I'm not convinced. I don't think there's such a basis." The court ruled that "[t]he judge did not specifically reject the reason given as not a bona fide reason or as a sham. Nevertheless, we think that the judge's statements taken as a whole support such a determination." *Id.*

There is nothing in this record that would support such a determination. Further, while the trial judge in *Curtiss* did not have the benefit of the court's ruling in *Burnett* to guide him in evaluating the challenge, the trial in this case took place over two years *after* the decision in *Burnett*, thereby requiring the judge to make a determination whether the proffered reason was bona fide or a sham.

[6]The Commonwealth argues on appeal that defense counsel chose not to exercise a peremptory challenge against another prospective juror with a medical background — a nonblack juror who was a medical technician; therefore, the judge was correct in rejecting defense counsel's reason for challenging the black prospective juror.

The record discloses that a physician was a member of the venire when the medical technician was called as a prospective juror. At that time, defense counsel had one peremptory challenge left. He did not exercise it.

Defense counsel, anticipating the Commonwealth's argument on appeal, immediately placed on the record his reasons for not exercising a challenge to the medical technician. He stated that he had to save one challenge in case the physician was called as a prospective juror. The judge and prosecutor did not respond to defense counsel.

Based on this record, we reject the Commonwealth's argument.

defendant's objection, the judge allowed an expert to testify in regard to the profile of a typical batterer.

In *Commonwealth* v. *Goetzendanner*, 42 Mass. App. Ct. 637, 642-646 (1997), we ruled that expert testimony about battered woman's syndrome was properly admitted where the evidence was limited to a description of the behavioral characteristics of typical victims of battering and did not "relate directly to the symptoms exhibited by an individual victim or victim witness nor may it include an opinion or diagnosis that that person suffers from the described condition." *Id.* at 644. We also held, however, that "[e]xpert testimony may not be admitted to profile or describe the typical attributes of the perpetrators of crimes." *Id.*

Here, although the expert did not use the word "batterer," she did testify extensively regarding the common characteristics of an "abusive male." This was error because it invited the jury to conclude that because the defendant fit the profile described by the expert, it is more likely than not that the defendant committed the crimes charged. *Commonwealth* v. *Day*, 409 Mass. 719, 723-724 (1991) (admission of expert testimony concerning battered child syndrome was admissible, but expert testimony concerning the typical child batterer constituted reversible error).

4. *Admission of prior bad acts evidence.* During the trial, more witnesses testified about the uncharged 1988 incident than about the January, 1994, incident. Seven witnesses testified about the 1988 incident and the prosecutor repeatedly referred to the 1988 incident in her closing argument.

It is well settled that the prosecution may introduce evidence of a defendant's prior bad acts, if relevant, to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive. *Commonwealth* v. *Mamay*, 407 Mass. 412, 417 (1990). "To be sufficiently probative the evidence must be connected with the facts of the case or not be too remote in time." *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994).

The Commonwealth argues that evidence of the prior violence against the complainant, particularly the 1988 incident, was highly probative because it allowed the jury to see the entire relationship between the complainant and the defendant.

Even if the evidence is relevant, a judge must guard against the danger of overwhelming a case with such bad act evidence.

Here, the amount of the evidence concerning the 1988 incident approached the outer limits of whether such evidence should be introduced. At retrial, the judge should again examine the question whether evidence of the 1988 incident should be admitted and, if so, make a determination regarding the amount of testimony that should be allowed to be given.

5. *Conclusion.* The defendant's other issues will not arise, we are sure, at the new trial.

The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court.

*So ordered.*