COMMONWEALTH *vs.* TOMMY CALDERON.

No. 97-P-0637.

Hampden. December 4, 1998. - March 16, 1999.

Present: BROWN, PORADA, & GREENBERG, JJ.

Further appellate review granted, 429 Mass. 1109 (1999).

*Jury and Jurors. Practice, Criminal,* Challenge to jurors, Instructions to jury, Reasonable doubt.

The record of the jury empanelment in a criminal case did not support the judge's determination that the Commonwealth had a valid reason for exercising a peremptory challenge to the only African-American juror on the venire, and a new trial was required. [487-488]

INDICTMENTS found and returned in the Superior Court Department on July 16, 1996.

The cases were tried before *John F. Murphy, Jr.,* J.

*Kenneth M. Diesenhof* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

BROWN, J. On appeal from his convictions of possession of a firearm without a firearms identification card and possession of ammunition without the same, the defendant contends (1) that the judge committed reversible error in allowing the Commonwealth to use one of its peremptory challenges to exclude the only African-American from the jury and (2) that trial counsel's failure to object to the judge's jury instruction on reasonable doubt created a substantial risk of a miscarriage of justice.

1. *Peremptory challenge.* After the judge decided not to excuse juror 3-16 for cause,[1] the prosecutor used a peremptory challenge and asked her to step down. The following conference was held at side bar.

DEFENSE COUNSEL: "Your Honor, naturally I would object

---

[1]See note 3, *infra.*

because [juror 3-16] is one of the very few people of color in the jury panel; and it would appear that I think she's the only African-American on the panel, and I would ask that she not be excused."

JUDGE: "Well, to me — I wasn't even aware that the defendant was black. Is your client black?"

DEFENSE COUNSEL: "No, the defendant is Hispanic, Your Honor. However, he has the option of selecting himself either black or Caucasian, as a Hispanic, and so for that same — I think he would be prejudiced by relieving the only African-American from the jury."

JUDGE: "But he is Hispanic?"

DEFENSE COUNSEL: "Yes, he is Hispanic."

JUDGE: "Okay. I'll hear from the Commonwealth."

PROSECUTOR: "Well, I remove minority jurors from the panel with great hesitation and great trepidation. I think it's the first time I've done it this year. I don't think there's any pattern. I am simply concerned about that particular juror's husband being on the Springfield Police Department. I believe it puts her in a very difficult position to listen to the testimony of other police officers. I would also say that I observed her smiling at [defense counsel] beforehand. I don't know if she's acquainted with [defense counsel], but simply, that is the reason I exercised my challenge."

JUDGE: "Well, based on the fact that it appears to me that — I didn't even realize that the defendant was Hispanic, from his appearance. He appears to me to be Caucasian. To me, that's not a Hispanic name."

PROSECUTOR: "Well, I think it is a Hispanic name. Calderon?"[2]

JUDGE: "I'm sorry, you're right. I was thinking it was —

---

[2]As an aside, the judge and both counsel were confused. In circumstances such as those present here, the ethnicity of the defendant is nearly irrelevant. The focus should have been on the ethnicity of the jury venire. See *Powers* v.

well, however, this is the same [juror] who came forward and said her husband was a police officer for twenty years; and I think that based on all the circumstances here, I'm going to allow her to be excused, and I'll note your objection, counselor."[3]

Generally, a trial judge's determination that the Com-

---

*Ohio*, 499 U.S. 400 (1991). See also *Peters* v. *Kiff*, 407 U.S. 493 (1972); *Commonwealth* v. *Roche*, 44 Mass. App. Ct. 372 (1998).

[3]Earlier, at side bar during the jury impanelment, the following exchange had occurred, which resulted in an initial decision that juror 3-16 would remain on the jury.

JUROR 3-16: "My husband is a Springfield police officer."

JUDGE: "What is his rank?"

JUROR 3-16: "He's a patrolman."

JUDGE: "How long has he been in the Department?"

JUROR 3-16: "About twenty years, I think."

JUDGE: "And is he in any particular department?"

JUROR 3-16: "He's in Property."

JUDGE: "Property?"

JUROR 3-16: "Mm-hmm. And also, extra details."

JUDGE: "I see. Well, I'm sure he comes home and discusses his work?"

JUROR 3-16: "Sometimes."

JUDGE: "Now, obviously, there's a lot of Springfield police officers listed here as prospective witnesses. Did you recognize any of those names?"

JUROR 3-16: "Yes. One of the names, Tim Cane. I personally don't know him, but I'm sure my husband does."

JUDGE: "Do you think it would be a problem to you to sit as a juror in a case like this, where you're going to have to make a decision as to the credibility of Springfield police officers?"

JUROR 3-16: "I don't think so."

JUDGE: "Okay. But you're still going to have to go home and talk to your husband every night. Is that going to be a problem to you?"

JUROR 3-16: "Probably not."

JUDGE: "Any question in your mind that you could sit as a juror in this

monwealth has a valid reason for exercising a peremptory challenge to exclude a juror is entitled to substantial deference on appeal, but that determination is not beyond review. *Commonwealth* v. *Soares*, 377 Mass. 461, 489, cert. denied, 444 U.S. 881 (1979). In this case, juror 3-16 was the only African-American, and her exclusion created a jury panel where the "minority representation" was reduced to "impotence." *Commonwealth* v. *Soares*, 377 Mass. at 488 n.32. "If the constitutional mandate of a jury which fairly reflects a cross section of the community is to signify more than hollow words in this Commonwealth, we cannot permit the peremptory challenge to be exercised with absolute and unbridled discretion." *Id.* at 484. There were missteps leading to the exclusion of juror 3-16 from the defendant's jury.

The Commonwealth, in its brief, acknowledges that it would have been better if the judge had stated his finding on the record, but concedes that the judge implicitly recognized a prima facie showing of impropriety existed because he "asked the prosecutor to explain [his] reasons" for the challenge. *Commonwealth* v. *Futch*, 38 Mass. App. Ct. 174, 175 (1995). See and compare *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. 564, 569, 570-571 (1991). "After the prosecutor offered an explanation for [his] challenges, the judge should have specifically determined whether they were bona fide or a mere sham. See *Commonwealth* v. *Fryar*, [414 Mass. 732, 739 (1993)]; *Commonwealth* v. *Soares*, *supra* at 491. Only when this procedure has been followed will an appellate court give due deference to the judge's conclusions." *Commonwealth* v. *Burnett*, 418 Mass. 769, 771-772 (1994). Accord *Commonwealth* v. *Curtis*, 424 Mass. 78, 80-81 (1997); *Commonwealth* v. *Roche*, 44 Mass. App. Ct. 372, 378 (1988).

Compounding the incompleteness of the inquiry, the judge foreclosed any rebuttal by defense counsel of the Commonwealth's explanation for its peremptory challenge. "By so doing, the defendant[] [was] thwarted in [his] attempt to show that reasons offered by the prosecutor did not 'pertain to the individual qualities of the prospective juror.' " *Commonwealth*

---

case?"

JUROR 3-16: "No."

JUDGE: "I'll have you remain on the panel."

v. *Futch*, 38 Mass. App. Ct. at 177-178, quoting from *Commonwealth* v. *Soares*, 377 Mass. at 491. See *United States* v. *Wilson*, 816 F.2d 421, 423 (8th Cir. 1987) (defendant must "be given the chance to rebut the proffered explanation as a pretext").

If the judge had taken the opportunity to flesh out the reasons he accepted the prosecutor's explanation, he would likely have concluded, as we do, that the record in this case does not support the decision to permit the peremptory challenge. "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record." *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. 948, 949 (1988), quoting from *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981). In *Legendre*, this court determined that, "[o]n the over-all record, the judge was warranted in concluding that the grounds offered for the challenges . . . were pretexts." *Commonwealth* v. *Legendre*, *supra* at 949. There, we concluded that "the motivation behind the [prosecutor's] challenges was a belief" that one gender would "be more sympathetic to the complaining witness and less sympathetic to the defendant." *Ibid.*

The Commonwealth contends that the prosecutor gave legitimate reasons for the juror's impartiality that were unrelated to her ethnicity — namely, that her husband was a member of the Springfield police department and that the prosecutor noticed juror 3-16 smiling at the defense counsel beforehand. This was insufficient justification. It is remarkable here (to put it mildly) that it was not defense counsel but the prosecution objecting to the police officer relationship; the defendant wanted juror 3-16 to remain part of the jury venire, in spite of the fact that her husband's occupation was that of a police officer. Compare *Commonwealth* v. *Soares*, 377 Mass. at 485 n.27; *Commonwealth* v. *Fruchtman*, 418 Mass. 8, 11, cert. denied, 513 U.S. 951 (1994); *Commonwealth* v. *Green*, 420 Mass. 771, 774-775 (1995). Cf. *Commonwealth* v. *Curtis*, 424 Mass. at 84 (Fried, J., dissenting) ("If the potential juror's spouse had worked in a law enforcement agency would a challenge by a defense counsel have seemed the least bit remarkable?").[4] In this regard, that stated basis is unconvincing and for the most

---

[4]Of course, if the record bore out that it was the Commonwealth's intention to act prophylactically so as to preclude the defendant from arguing later that

part counter-intuitive and provides inadequate record support for the judge's determination.

As to the Commonwealth's other argument below (which was not mentioned by the judge and, properly, is not emphasized on appeal), the so-called smirk or smile objection has long been discounted by this court. See, e.g., *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981).

A reversal of the defendant's convictions is warranted.

2. *Definition of reasonable doubt.* Given that the defendant is entitled to a new trial, we need not pursue in depth his concerns regarding the jury instruction defining "reasonable doubt." We note for purposes of any retrial, however, that, "[w]here issues as important as reasonable doubt are concerned, judges would do well to follow approved models." *Commonwealth* v. *Burke*, 44 Mass. App. Ct. 76, 81 (1997).

3. *Disposition.* As noted, the defendant was convicted on two indictments. The ammunition conviction was placed on file with the defendant's consent. Because the errors discussed above also affected the conviction placed on file, we also reverse that conviction. See *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1986); *Commonwealth* v. *O'Brien*, 30 Mass. App. Ct. 807, 807 n.1 (1991).

*Judgments reversed.*

*Verdicts set aside.*

his trial was unfair or that his counsel was ineffective, this might be a different case.