COMMONWEALTH vs. TOMMY CALDERON.

Hampden. December 7, 1999. - March 10, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & COWIN, JJ.

*Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Challenge to jurors.

Where, at the trial of a criminal case, the judge did not follow the proper procedure for determining whether the prosecutor's explanation for his peremptory challenge to the only African-American juror on the panel was bona fide and race-neutral, this court concluded, on a de novo review, that the prosecutor's reasons for the challenge were not race-neutral; the defendant was entitled to a new trial. [24-28] LYNCH, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on July 16, 1996.

The cases were tried before *John F. Murphy, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

*Kenneth M. Diesenhof* for the defendant.

GREANEY, J. A jury in the Superior Court convicted the defendant of unlawful possession of a firearm, G. L. c. 269, § 10 (*a*), and of unlawful possession of ammunition, G. L. c. 269, § 10 (*h*). The defendant has appealed, arguing that (1) the judge committed reversible error in allowing the Commonwealth to use one of its peremptory challenges to exclude the only African-American from the jury; and (2) the judge's instructions to the jury on reasonable doubt (which were not objected to) were erroneous, and the error created a substantial risk of a miscarriage of justice. The Appeals Court concluded that the defendant was entitled to a new trial because of the Commonwealth's misuse of the peremptory challenge. *Commonwealth* v. *Calderon,* 46 Mass. App. Ct. 483 (1999). We granted the Commonwealth's application for further appellate

review. We conclude that the judge erred in allowing the peremptory challenge, and we reverse the convictions on that point. As a consequence, we need not reach the issue of the adequacy of the jury instructions on reasonable doubt.

The dispositive issue arose in the following manner. During the jury selection process, the judge identified the prospective witnesses for the venire, indicating that several police officers might testify, and the judge asked whether any prospective juror needed to bring anything to his attention concerning an inability to sit as an unbiased juror. One juror (juror 3-16) volunteered that her husband was a police officer and that one of the names of the potential police witnesses sounded familiar to her. The following exchange took place:

> JUROR 3-16: "My husband is a . . . police officer."
>
> THE JUDGE: "What is his rank?"
>
> JUROR 3-16: "He's a patrolman."
>
> THE JUDGE: "How long has he been in the Department?"
>
> JUROR 3-16: "About twenty years, I think."
>
> THE JUDGE: "And is he in any particular department?"
>
> JUROR 3-16: "He's in Property."
>
> THE JUDGE: "Property?"
>
> JUROR 3-16: "Mm-hmm. And also, extra details."
>
> THE JUDGE: "I see. Well, I'm sure he comes home and discusses his work?"
>
> JUROR 3-16: "Sometimes."
>
> THE JUDGE: "Now, obviously, there's a lot of . . . police officers listed here as prospective witnesses. Did you recognize any of those names?"
>
> JUROR 3-16: "Yes. One of the names . . . . I personally don't know him, but I'm sure my husband does."
>
> THE JUDGE: "Do you think it would be a problem to you to sit as a juror in a case like this, where you're going to have to make a decision as to the credibility of . . . police officers?"

JUROR 3-16: "I don't think so."

THE JUDGE: "Okay. But you're still going to have to go home and talk to your husband every night. Is that going to be a problem to you?"

JUROR 3-16: "Probably not."

THE JUDGE: "Any question in your mind that you could sit as a juror in this case?"

JUROR 3-16: "No."

THE JUDGE: "I'll have you remain on the panel."

Later, at the request of defense counsel, the judge asked the members of the venire whether they would tend to believe or disbelieve the testimony of a police officer just because of that person's occupation. When no one answered affirmatively, the judge stated, "I find the balance of the panel is indifferent." Juror 3-16 was subsequently seated on the prospective trial jury. The prosecutor then sought to exercise a peremptory challenge to remove her. The following conference ensued at sidebar:

DEFENSE COUNSEL: "Your Honor, naturally I would object because [juror 3-16] is one of the very few people of color in the jury panel; and it would appear that I think she's the only African-American on the panel, and I would ask that she not be excused."

THE JUDGE: "Well, to me — I wasn't even aware that the defendant was black. Is your client black?"

DEFENSE COUNSEL: "No, the defendant is Hispanic, Your Honor. However, he has the option of selecting himself either black or Caucasian, as a Hispanic, and so for that same — I think he would be prejudiced by relieving the only African-American from the jury."

THE JUDGE: "But he is Hispanic?"

DEFENSE COUNSEL: "Yes, he is Hispanic."

THE JUDGE: "Okay. I'll hear from the Commonwealth."

THE PROSECUTOR: "Well, I remove minority jurors from the panel with great hesitation and great trepidation. I

think it's the first time I've done it this year. I don't think there's any pattern. I am simply concerned about that particular juror's husband being on the . . . [p]olice [d]epartment. I believe it puts her in a very difficult position to listen to the testimony of other police officers. I would also say that I observed her smiling at [defense counsel] beforehand. I don't know if she's acquainted with [defense counsel], but simply, that is the reason I exercised my challenge."

THE JUDGE: "Well, based on the fact that it appears to me that — I didn't even realize that the defendant was Hispanic, from his appearance. He appears to me to be Caucasian. To me, that's not a Hispanic name."

THE PROSECUTOR: "Well, I think it is a Hispanic name. Calderon?"

THE JUDGE: "I'm sorry, you're right. I was thinking it was — well, however, this is the same [juror] who came forward and said her husband was a police officer for twenty years; and I think that based on all the circumstances here, I'm going to allow her to be excused, and I'll note your objection, counselor."

Juror 3-16 was then excused.

1. The defendant claims that the judge failed to follow procedural requirements set forth in *Commonwealth* v. *Burnett*, 418 Mass. 769, 770-771 (1994), for determining whether there is a bona fide race-neutral explanation for a peremptory challenge when there is a likelihood of the exclusion of a juror by reason of membership in a protected group. Specifically, the defendant argues that (a) the Commonwealth's use of the peremptory challenge constituted a prima facie case of impropriety, which the judge implicitly recognized when he required the prosecutor to give his reasons for the challenge; (b) the judge did not afford defense counsel a chance to rebut the prosecutor's statements; and (c) after hearing the prosecutor's reasons, the judge failed to make his own independent evaluation as to their validity. The Commonwealth maintains that (a)

there was no prima facie case of impropriety shown[1]; (b) the judge's failure to permit some rebuttal by defense counsel to the prosecutor's reasons was of no significance, because defense counsel had already stated his position and was allowed an objection; and (c) the judge implicitly accepted the prosecutor's reasons for the challenge as race-neutral.

The law in this area is settled. "The use of peremptory challenges to exclude prospective jurors solely because of bias presumed to derive from their membership in discrete community groups is prohibited both by art. 12 [of the Massachusetts Declaration of Rights], see *Commonwealth* v. *Soares*, 377 Mass. 461, 486-488, cert. denied, 444 U.S. 881 (1979), and the equal protection clause, see *Batson* v. *Kentucky*, 476 U.S. 79, 84-88 (1986)." *Commonwealth* v. *Harris*, 409 Mass. 461, 464 (1991). The challenge of even a single prospective juror within a protected class can, in certain instances, constitute a prima facie showing of impropriety. See *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997); *Commonwealth* v. *Harris, supra* at 465. The defendant, a minority person, was entitled to a jury representing a fair cross section of the community, which would include African-Americans as well as Hispanics. See *Commonwealth* v. *Soares, supra* at 478. The judge, by requiring the prosecutor to explain his reasons for the peremptory challenge of juror 3-16 after defense counsel's objection, implicitly found that the challenge might be improper.[2] See *Commonwealth* v.

---

[1] The Commonwealth suggests that juror 3-16 was not the only minority member of the venire, that the crimes were not interracial and were victimless, and that the judge had allowed juror 3-16 to stay after she was unable to state unequivocally her impartiality. Based on these considerations, the Commonwealth concludes that the prosecutor's challenge should enjoy the presumption of propriety normally given to peremptory challenges.

[2] The Commonwealth points out that other jurors on the panel "had surnames which could have been Hispanic" and suggests that, because juror 3-16 was not the only minority juror, the prosecutor's peremptory challenge should have been presumed to be proper. While juror 3-16 was the sole African-American on the jury panel, the record does not conclusively show that there were other Hispanics in the jury box. The usual tools we rely on to measure one's ethnicity, primarily name and appearance, are often deceptive. (Even self-identification is not always determinative.) We reject the Commonwealth's argument that the presence of other Hispanics on the jury makes the judge's implicit finding of impropriety invalid. See *Commonwealth* v. *Fryar*, 414 Mass. 732, 738-739 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522

*Caldwell,* 418 Mass. 777, 778 (1994); *Commonwealth* v. *Futch,* 38 Mass. App. Ct. 174, 175 (1995).

The burden was then on the Commonwealth to provide a neutral explanation establishing that the challenge was unrelated to juror 3-16's race. See *Commonwealth* v. *Harris, supra* at 468. The reasons must be "personal to the juror and not based on the juror's group affiliation." *Commonwealth* v. *Burnett, supra* at 771, quoting *Commonwealth* v. *Young,* 401 Mass. 390, 401 (1987). Because the prosecutor's articulation sounded superficial, defense counsel should have been permitted the opportunity to rebut the proffered explanation as suggesting pretext. See *Commonwealth* v. *Futch, supra* at 177-178. For all we know, if defense counsel had been allowed a response, the judge might have reconsidered his decision.[3] Further, once the process was complete, the judge was required to make an independent evaluation of the prosecutor's reasons and to determine specifically whether the explanation was bona fide or a pretext. See *Commonwealth* v. *Burnett, supra* at 771-772. This latter step involves more than a rubber stamping of the proffered reasons; it requires a meaningful consideration whether the challenge has a substantive basis or is impermissibly linked to race. The judge confined his ruling to the oblique statement that, "based on all the circumstances here," he would allow juror 3-16 to be excused. The definitive pronouncement expected of the judge was not forthcoming. The judge's failure to follow the proper procedure for

U.S. 1033 (1997). We also reject the Commonwealth's argument that its challenge was somehow entitled to a presumption of propriety, because this case did not involve an interracial crime. While an indication that racial prejudice might be a potential issue at trial may be a factor in a judge's determination of a showing of impropriety, it is certainly not the exclusive factor.

[3]The Commonwealth's brief concedes that a response by defense counsel was appropriate, but suggests the lack of a response was of no effect. The Commonwealth argues as follows: "While the defense counsel was not given the chance to rebut the prosecutor's reason, he had already stated his reason for opposing the challenge and it is difficult to see what more could have been said on this issue. Moreover, he preserved the issue by objection." We disagree that this failure was insubstantial. As stated by the Appeals Court, by foreclosing any rebuttal by defense counsel to the Commonwealth's explanation for the peremptory challenge, the defendant was "thwarted in [his] attempt to show that reasons offered by the prosecutor did not 'pertain to the individual qualities of the prospective juror.' " *Commonwealth* v. *Calderon,* 46 Mass. App. Ct. 483, 486 (1999), quoting *Commonwealth* v. *Futch,* 38 Mass. App. Ct. 174, 177-178 (1995). See *Commonwealth* v. *Wilson,* 816 F.2d 421, 423 (8th Cir. 1987).

determining whether the prosecutor's explanation was bona fide necessitates that we give no deference to the judge's ruling. See *id.* at 772.

Procedural mistakes in the allowance of a peremptory challenge by the Commonwealth, of course, do not constitute a per se basis for reversal. The mistakes and omissions require us to make our own determination whether the Commonwealth's reasons for the challenge were race-neutral. They were not. Although the credibility of police testimony might have been important to the Commonwealth's case, juror 3-16 had declared, to the judge's satisfaction, that she was unbiased and would decide the indictments on the merits. Furthermore, while the fact that juror 3-16's spouse was a police officer may have been reason for a successful defense challenge, on the obvious ground that she might be more inclined to believe the testimony of the police officers over the defendant's evidence, the fact provides no compelling reason for a challenge by the Commonwealth. We consider it specious to argue that the prosecutor may have acted prophylactically to remove from the jury someone who might be biased in the Commonwealth's favor. The assignment of examining juror 3-16's objectivity fell primarily to defense counsel, who was undoubtedly aware that the juror might harbor a bias in favor of the Commonwealth. Moreover, shortly before the peremptory challenge to juror 3-16 was made, the prosecutor brought to the judge's attention information indicating that another potential juror should be excused because of possible prejudice *against* the police. Common sense suggests that the prosecutor may not have been acting fairly when, after questioning one juror's antipathy to the police, he challenged juror 3-16 on the basis that she might be prejudiced *in favor of* the police.[4] The prosecutor's protestation that he "remove[s] minority jurors from the panel with great hesitation and great trepidation" adds no weight to the Commonwealth's claim of neutrality. See *Batson* v. *Kentucky*, 476 U.S. 79, 98 (1986), quoting *Alexander* v. *Louisiana*, 405 U.S. 625, 632 (1972) ("Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive, or 'affirm[ing] [his] good faith in making individual selections' "). "If these general assertions were accepted as rebutting the defendant's prima facie case, the [constitutional protections] 'would be but . . . vain and illusory

---

[4]The only other reason for the challenge offered by the prosecutor, that juror 3-16 smiled at defense counsel, will not justify the challenge. See *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981).

requirement[s].' " *Id.*, quoting *Norris* v. *Alabama*, 294 U.S. 587, 598 (1935).

Because of the procedural errors in the handling of the challenge, we have examined its validity on a de novo basis. We have kept in mind that equivocation does not equate with justification. We conclude that the diaphanous reasons given by the prosecutor do not validate the challenge.[5] The defendant's convictions must be reversed.

2. Because the defendant is entitled to a new trial, we need not decide whether the reasonable doubt instructions were erroneous, and, if so, whether the errors created a substantial risk of a miscarriage of justice. At any retrial, the judge should instruct on reasonable doubt in accordance with one of the approved formulations.

3. Even though the defendant's conviction of unlawful possession of ammunition was placed on file, we conclude that that conviction must also be reversed. See *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1986); *Commonwealth* v. *O'Brien*, 30 Mass. App. Ct. 807, 807-808 n.1 (1991).

The judgments of conviction are reversed, the jury verdicts are set aside, and the cases are remanded to the Superior Court for a new trial.

*So ordered.*

LYNCH, J. (dissenting). It is inconceivable to me that a criminal defendant's peremptory challenge of a juror based on the fact that the juror was married to a police officer would be regarded as improper. That the challenge in this case came from the prosecutor does not change the equation. Not only does the prosecutor's explanation that the juror would be put in a very difficult position ring true, but we must also consider the prosecutor's independent obligation to seek a fair trial. Nor do I believe that, by permitting the prosecutor to explain his chal-. lenge in response to an objection by the defense, the judge was

---

[5]The dissenting opinion questions whether the judge made an implicit finding that the challenge was improper. That can be the only logical conclusion from the colloquy that occurred. It appears that the prosecutor did not want juror 3-16, an African-American woman, on the trial jury, despite her clear affirmations of neutrality and fairness, because, as a minority, she might be sympathetic to the defendant.

making an implicit finding that the challenge might be improper. The situation would be different if the judge, following one or multiple peremptory challenges of minority members of the jury venire, had *"requested* that the prosecutor *supply race-neutral explanations* for his challenges" (emphasis added). *Commonwealth* v. *Caldwell,* 418 Mass. 777, 778 (1994). I suggest that all attorneys trying jury cases would at least consider challenging a juror married to a police officer where a member of the spouse's department was going to be a witness.

The result the court reaches today can be of little help to trial judges and attorneys in guiding their conduct in jury selection. I would prefer that, rather than impose on trial judges the impossible task of scrutinizing peremptory challenges for improper motives, we abolish them entirely. I, therefore, respectfully dissent.