## COMMONWEALTH *vs.* RICHARD J. DOLLIVER.

No. 00-P-518.

Middlesex. June 11, 2001. - August 13, 2001.

Present: BECK, CYPHER, & MASON, JJ.

*Motor Vehicle,* Operating under the influence. *Jury and Jurors. Practice, Criminal,* Challenge to jurors, Instructions to jury, Presumptions and burden of proof. *Evidence,* Breathalyzer test.

Nothing in the record of a trial on a complaint charging operation of a motor vehicle while under the influence of intoxicating liquor suggested that the prosecutor's plausible and gender-neutral explanation for his peremptory challenge to the only male juror on the panel, viz., that the prosecutor wished to avoid any juror with a scientific background in a case where the reliability of a breathalyzer machine was to be challenged, was in fact a mere sham or pretext for impermissible gender discrimination. [280-283]

At the trial of a complaint charging operation of a motor vehicle while under the influence of intoxicating liquor, the judge properly declined to instruct the jury that they could disregard the results of the defendant's breathalyzer test if they believed the test might have been inaccurate because it was scientifically invalid or not properly and competently administered, where the record did not demonstrate that the defendant had challenged the accuracy of the breathalyzer machine at trial, and where, in light of all the instructions, there was no possibility that the jury would have understood that they were bound to accept the results of the breathalyzer machine, or that the defendant bore any burden of proof that the machine was reliable. [283-285]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on December 15, 1997.

The case was tried before *Robert V. Greco,* J.

*Eileen D. Agnes* for the defendant.

*Kathryn E. McIntyre (David W. Cunis,* Assistant District Attorney, with her) for the Commonwealth.

MASON, J. After a six-person jury trial in District Court, Richard Dolliver was convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of

G. L. c. 90, § 24. On appeal, he claims that (1) the prosecutor's peremptory challenge of the only male juror deprived him of his right under art. 12 of the Massachusetts Declaration of Rights to be tried by an impartial jury and (2) the judge improperly failed to instruct the jury they could disregard the results of the defendant's breathalyzer test if they believed the test may have been inaccurate because it was scientifically invalid or not properly and competently administered. We affirm the conviction.

*The evidence.* In the light most favorable to the Commonwealth, the evidence was as follows. Just after midnight on the morning of December 14, 1997, Officer Michael Doherty of the Framingham police department was dispatched to the scene of an accident near the Marlborough town line. When Doherty arrived at the scene he found a Dodge Daytona car on top of a rock a few feet off the side of the road opposite from the car's direction of travel, with no one in the car. A second officer, Jose Torres, searching nearby roads for the driver with the spotlights of his marked cruiser, eventually sighted the defendant, Richard Dolliver, crouched down behind a tree in the woods. Initially unresponsive to the officer's calls, Dolliver finally got up and staggered unsteadily toward Torres when the latter walked to within three feet.

Dolliver told Torres that he had just been in an accident and was going home to call a wrecker to remove his car. Dolliver had a smell of alcohol on his breath, his speech was slurred, and he had red, glassy eyes. Dolliver further confirmed that he was the driver of the Dodge Daytona involved in the accident. In response to questions about his alcohol consumption, Dolliver stated that he had drunk just one beer.

Dolliver thereafter flunked certain field sobriety tests. Doherty accordingly placed Dolliver under arrest and took him to the Framingham police station. There Dolliver was offered, and accepted, an opportunity to take a breathalyzer test.

Officer Doherty administered the test to Dolliver at about 2:00 A.M. Officer Doherty, a certified operator of the "Intoxilyzer 5000" breathalyzer machine used in the test, followed written procedures provided by the Office of Alcohol and Testing pursuant to G. L. c. 90, § 24K. Dolliver twice registered a

blood alcohol level of .09, above the level of .08 at which a permissible inference may be drawn that the person tested is under the influence of alcohol. See G. L. c. 90, § 24(1)(e).

In addition to Officers Torres and Doherty, who testified to the events just recited, Officer Michael McCloy of the Framingham police department testified that he had stopped the defendant twice for speeding earlier in the evening. Additionally, Lieutenant Michael Leporati of the Framingham police department testified that, as the officer in charge of the machine used to conduct the breathalyzer test, he had ensured that the machine had been subjected to each of the annual certifications and monthly calibration tests required by law.

1. *Allowance of peremptory challenge.* After six women and one man were seated as prospective jurors during the jury selection process, the prosecutor sought to exercise a peremptory challenge to remove the man. At an ensuing sidebar conference, which was not transcribed,[1] defense counsel objected to the challenge, pointing out that the challenged juror was the only male juror on the panel, and asked that the prosecutor be required to state a reason for the challenge. The judge stated that he was not going to make an inquiry since he did not believe that gender was a "protected class," but the prosecutor nonetheless "offered reasons other than gender for challenging the juror including the juror['s] background in science." The judge did not make a specific ruling on the prosecutor's articulated reasons, but "stated in substance that, for what it is worth, the prosecutor has offered those reasons for challenging the juror." The judge then overruled defense counsel's objection.

Dolliver contends that the judge's suggestion that gender is

---

[1]The parties agree that the sidebar conferences are inaudible on the District Court audiotape of the trial and, hence, cannot be transcribed, although the parties appear not to have been aware of this problem until the transcript was delivered about six months later. Dolliver accordingly submitted a proposed "Statement of the Evidence as to Missing Voir Dire and Jury Instruction Transcripts," together with a supporting affidavit of defense counsel. See Mass.R.A.P. 8(c), as amended, 378 Mass. 932 (1979). After receiving an affidavit from the prosecutor, the trial judge ultimately approved certain parts, but not all, of the defendant's submission and supporting affidavit. He adopted substantially all of the prosecutor's affidavit. Dolliver has made no further effort to modify or correct the record. See Mass.R.A.P. 8(e), as amended, 378 Mass. 932 (1979).

not a "protected class" for jury selection purposes was clearly erroneous, and that the judge should have followed the prescribed procedures for resolving an apparently improper challenge. See *Commonwealth* v. *Calderon*, 431 Mass. 21, 25-27 (2000); *Commonwealth* v. *Roche*, 44 Mass. App. Ct. 372, 375-377 (1998). We agree with these contentions. Gender is among the group affiliations on which peremptory challenges cannot be based. *Commonwealth* v. *Rodriguez*, 431 Mass. 804, 807 (2000). The judge therefore should have made a finding whether an initial prima facie showing of impropriety was established and then, if it was, determined whether the reasons advanced by the prosecutor for exercising the challenge were "bona fide or a mere sham." *Ibid.*, quoting from *Commonwealth* v. *Curtiss*, 424 Mass. 78, 81 (1997).

Nevertheless, the judge's failure to follow these specified procedures before allowing the Commonwealth's peremptory challenge in this case does not constitute a per se basis for reversal. *Commonwealth* v. *Calderon*, *supra* at 27. Rather, it requires us to make our own determination whether the prosecutor's reasons for the challenge were gender-neutral. *Ibid.* We conclude in the circumstances of this case that they were.

First, it is plausible that the prosecutor would have wanted to avoid any juror with a scientific background in a case involving the use of a breathalyzer machine, especially where the reliability of that machine was to be challenged.[2] Such a juror might be especially demanding regarding proof of the reliability of the machine. See and compare *Hernandez* v. *New York*, 500 U.S. 352, 355-357, 361 (1991) (prosecutor offered race-neutral explanation for striking two Spanish-speaking Latino prospective jurors by stating that he doubted their ability to defer to official translation of anticipated Spanish language testimony). Accordingly, this is not a case where the prosecutor's articulated reason for exercising a peremptory challenge is so manifestly implausible as to carry its own indicia of pretext. Rather, the reason articulated by the prosecutor for exercising his peremptory challenge in this case was plausible and within the zone of considerable discretion reserved for peremptory challenges. See

[2]Defense counsel had indicated prior to jury selection that she intended to challenge the reliability of the breathalyzer machine used in this case.

*United States* v. *Serino*, 163 F.3d 91, 93 (1st Cir. 1998) ("The defendant's lawyer gave a perfectly understandable reason for the challenge; he preferred not to have a social worker decide a drug charge"). Contrast *Commonwealth* v. *Calderon*, 431 Mass. at 27 ("We consider it specious to argue that the prosecutor may have acted prophylactically to remove from the jury someone who might be biased in the Commonwealth's favor"); *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. 1, 5, *S.C.*, 418 Mass. 769 (1994) (proffered rationale fell short of having a "veneer of plausibility," where prosecutor stated that he had challenged final black juror based upon juror's position as a youth services program director, but twenty-six year old defendant could hardly be characterized as a youth and there was no apparent reason why youth services program director should be biased in his favor).

Moreover, nothing in the record suggests that the reason articulated by the prosecutor for challenging the male juror would have been equally applicable to the female jurors whom the prosecutor did not challenge. See *Commonwealth* v. *Futch*, 38 Mass. App. Ct. 174, 177 (1995) ("For the purposes of peremptory challenges, the term 'neutral' is defined as a reason which is not present in those nonminority panel members not struck by the Commonwealth"). If there were any such evidence, defense counsel had a responsibility to preserve it.[3] Nor does it appear that the prosecutor engaged in a series of strikes of male jurors, or had any obvious reason to strike male jurors solely because of their gender. Contrast *Commonwealth* v. *Carleton*, 418 Mass. 773, 774-775 (1994) (holding invalid prosecutor's peremptory challenge of arguably all the jurors in the venire with Irish-sounding surnames). There is, in short, nothing in the record suggesting that the prosecutor's articulated reason for his challenge, although plausible and gender-neutral, was in fact a mere sham or pretext for impermissible gender discrimination. Compare *Commonwealth* v. *Rodriguez*, 431 Mass. at 809 (where defense counsel had used eight peremptory

---

[3]At oral argument, defense counsel asserted that she was precluded from preserving any evidence of pretext because the prosecutor did not state any reason at all for his challenge. This assertion is not supported by the reconstructed record as settled and approved by the trial judge.

challenges to strike women from jury, and sought to use his ninth challenge also to strike a woman, challenge was properly disallowed since counsel's only explanation was that he did not like the juror's "looks"), and Commonwealth v. Botticelli, 51 Mass. App. Ct. 802, 809-810 (2001) (defense counsel's repeated challenges of female jurors in case involving alleged vicious assault of female victim properly disallowed where counsel offered only vague explanations, including that one juror had a "stern appearance" and that another might "identify with the victim"), with Commonwealth v. Green, 420 Mass. 771, 774-775, 778 (1995) (defense counsel's challenges properly allowed where sister-in-law of first challenged juror was shooting victim and father and brother of second challenged juror were Boston police officers).

We therefore determine that allowing the prosecutor's challenge of the male juror does not require reversal. The judge's failure to follow the established procedure for evaluating such challenge makes this a close case. However, as we have indicated, there is nothing in the record to suggest that gender was the basis for the challenge or that the prosecutor's motive was otherwise improper.

2. *Jury instructions.* The judge instructed the jury that Dolliver was entitled to a presumption of innocence and that they could not find him guilty of the offense charged "unless and until the Commonwealth produces evidence from whatever the source that proves he's guilty beyond a reasonable doubt." The judge further instructed the jury that the Commonwealth's burden of proof "never shifts" and that "[t]he presumption of innocence stays with the defendant unless and until the evidence convinces you unanimously as a jury that the defendant is guilty beyond a reasonable doubt." Thereafter, with respect to the breathalyzer evidence, the judge instructed the jury as follows:

> "Now, when a person charged with [the offense of driving under the influence of intoxicating liquor] admits to a breath test, that test may assist you in determining whether the person was under the influence of intoxicating liquor at the time. Evidence of such a test is before you in this case. The law says if the percentage of alcohol by weight in the defendant's blood was .08 percent or more, .08, .09,

.10, etcetera, .08 percent or more[,] from such evidence you may, if you wish, draw an inference that the defendant was under the influence of intoxicating liquor."

Dolliver claims that the judge also should have charged the jury as follows:

"If you believe that the test may have been inaccurate (because it was scientifically invalid) (or) (because it was not properly and competently administered) then you should disregard the test results altogether and determine whether the defendant is guilty or not guilty based on the other evidence presented in this case."

Model Jury Instructions for Use in the District Court § 5.10, at 4 (1995).

Dolliver claims that he was entitled to the foregoing additional instruction because, during cross-examination of Officer Doherty, who administered the test, and also of Lieutenant Leporati, who maintained the machine, defense counsel "effectively challenged the accuracy of the breathalyzer machine." Dolliver further claims that the judge's failure to give the requested additional instruction impermissibly "shifted to the defendant the burden of proof on the question whether he was under the influence of liquor."

The record in this case fails to support Dolliver's assertions. Although defense counsel brought out during her cross-examination of Lieutenant Leporati that a simulator test performed at the time Dolliver was tested produced a reading of .14, rather than .15, we have previously noted that such a reading is within the zone of tolerance. See *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. 448, 451 (1995). See also *Commonwealth* v. *Cochran*, 25 Mass. App. Ct. 260, 261-263 (1988); 501 Code Mass. Regs. § 2.56(2) (1996). The reading therefore confirmed, rather than refuted, that the machine was registering accurately at the time Dolliver was tested.[4]

In any event, we do not agree that the judge's failure to give

---

[4]Defense counsel also established on cross-examination of Lieutenant Leporati that the machine had from time to time undergone maintenance or repair. However, this generalized evidence fell far short of suggesting any lack of reliability of the instrument on the date in question. Contrast *Commonwealth* v. *Neal*, 392 Mass. 1, 20 n.20 (1984).

the requested supplemental instruction impermissibly shifted to Dolliver the burden of proof on the question whether he was under the influence of liquor, or otherwise gave rise to a substantial risk of a miscarriage of justice, even assuming its omission was error.[5] To the contrary, as noted above, the judge emphasized to the jury that the burden of proof remained at all times with the Commonwealth. In light of the instructions, there is no possibility that the jury would have understood that they were bound to accept the results of the breathalyzer machine, or that Dolliver bore any burden of proof that the machine was unreliable.

Dolliver's reliance on our decision in *Commonwealth* v. *Williams*, 19 Mass. App. Ct. 915 (1984), is misplaced. In that case, the jury were instructed that, as a result of evidence that the defendant had scored .12 on his breathalyzer test, "[t]here *shall be* an inference that [the] defendant was under the influence of intoxicating liquor." *Id.* at 916 (emphasis original). Here, by contrast, the jury were told only that the "test *may* assist you" in that regard and "if the percentage of alcohol by weight in the defendant's blood was .08 percent or more . . . from such evidence *you may, if you wish*, draw an inference that the defendant was under the influence of intoxicating liquor" (emphases added). The judge's instructions did not mandate any inference or otherwise shift the burden of proof to the defendant.

*Judgment affirmed.*

---

[5]Although defense counsel requested the supplemental instruction at a sidebar conference, she did not subsequently object to the judge's failure to include the supplemental instruction in his charge to the jury, and there is no indication in the record that she otherwise preserved the issue for appeal. Accordingly, even assuming the judge's failure to give the instruction was error, reversal is required only if it gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Torres*, 420 Mass. 479, 482-484 (1995).