## Commonwealth vs. Mark Van Winkle.

Norfolk. October 7, 2004. - January 7, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Sosman, JJ.

*Homicide. Robbery. Jury and Jurors. Practice, Criminal,* Challenge to jurors, Instructions to jury, Duplicative convictions, Capital case.

At the trial of indictments for murder in the first degree, armed robbery, armed assault with intent to murder, armed assault with intent to rob, and assault and battery by means of a dangerous weapon, no reversible error arose from the judge's requiring defense counsel to explain his peremptory challenge of the only African-American juror in the venire, and it was not ineffective assistance for defense counsel not to bring to the judge's attention the defendant's feeling that the challenged juror was biased against him. [235-236]

The defendant at the trial of indictments for murder in the first degree, armed robbery, armed assault with intent to murder, armed assault with intent to rob, and assault and battery by means of a dangerous weapon failed to demonstrate that errors in the jury instructions cumulatively constituted reversible error, where no substantial likelihood of a miscarriage of justice arose from the instructions related to the crimes that required specific intent [236-238]; where the error in the judge's malice instruction was inconsequential because it related to a theory of murder on which the defendant was not convicted [238-239]; where the manslaughter instructions as they referred to the absence of time to deliberate were correct, the erroneous instructions that reversed the burden of proof were insignificant because the convictions showed that the jury rejected the defendant's testimony, and the instructions as a whole did not effectively eliminate manslaughter from the jury's consideration [239-241]; where the armed robbery instruction was unassailable in light of the fact that the issue for the jury was not intent to steal [241-242]; where the defendant was not entitled to an intoxication instruction [242]; and where the tenor of the jury instructions was not such that the judge wrongfully influenced the jurors by invading their function via improper comments [242-243].

In the circumstances of a criminal trial, no substantial likelihood of a miscarriage of justice arose from the possibility that members of the jury may have seen the defendant being brought into the court house in restraints. [244]

Indictments found and returned in the Superior Court Department on October 20, 1993.

The case was tried before *James D. McDaniel, Jr.,* J., and a motion for a new trial, filed on October 3, 2002, was heard by *Charles J. Hely,* J.

*Jonathan S. Sales* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. In 1994, a Norfolk County jury convicted the defendant of murder in the first degree on theories of felony-murder and deliberate premeditation and of the armed robbery of Israel Espino. He also was convicted of two charges each of armed assault with intent to murder, armed assault with intent to rob, and assault and battery by means of a dangerous weapon of Frank Espino and Juan Guerra. He was sentenced to life in prison without the possibility of parole for his murder conviction. The judge also imposed concurrent sentences for all the other crimes, except for the two charges of armed assault with intent to murder, for which he received from twelve to twenty years, to commence after his life sentence. In 1998, the defendant filed a motion for new trial, which was denied. In this appeal, the defendant raises the same issues he raised in his motion for a new trial. He asserts error in the denial of his peremptory challenge to a juror and in certain jury instructions. He also argues that his armed robbery conviction is duplicative and that the jury may have seen him in restraints. He further asserts several grounds for the court invoking its power pursuant to G. L. c. 278, § 33E. Because we conclude that the evidence overwhelmingly supports the defendant's guilt on all charges and that there is no reason to exercise our power pursuant to G. L. c. 278, § 33E, we affirm the defendant's convictions.

*Facts.* We recount the facts the jury were warranted in finding, reserving certain details for our discussion of the issues. At the time the crimes were committed, the defendant was a twenty year old former marine who had a girl friend who was in a rehabilitation facility in Falmouth. The girl friend called the defendant from the facility, and asked him to get her out. The defendant promised her that he would pick her up at approximately 2 P.M. on Saturday, October 9, 1993, and they would drive to either Florida or California together.

Because the defendant had no money and no vehicle with

which to fulfil his promise to his girl friend, he made a plan to rob someone to obtain them.[1] At various times, he shared certain details of his plan with friends. The plan included obtaining a gun, pretending that he had a large quantity of marijuana to sell to drug dealers, and taking the drug dealers to an area near a house where he used to live at 159 Forest Road in Millis, where he would rob them. The area the defendant chose was very dark and wooded. The defendant not only knew his way around the woods, but he knew that the drug dealers would not know the area, thus putting himself at an advantage.

The defendant first asked one friend to help him obtain a gun but, when he was unsuccessful, on October 5, 1993, he obtained one through another friend. The defendant set up the "drug deal" through Juan Guerra, one of the victims, whom he met through a friend. Guerra acted as the middle man for the deal. The defendant would receive $7,000 for fourteen pounds of marijuana.

On the evening of October 5, 1993, through Guerra, the defendant met Israel Espino, who showed him an envelope of money. The defendant first took Guerra and Israel Espino to a spot near 159 Forest Road for them to sample the marijuana that the defendant claimed was in a duffel bag hidden in the woods nearby. For this part of his plan, the defendant had obtained, earlier in the day, a small quantity of marijuana.

Once they all had sampled the marijuana, Israel Espino asked to be taken to the Brighton section of Boston so that his brother, Frank Espino, could sample the marijuana also. After Frank Espino sampled the marijuana, he insisted on accompanying the other three men to Millis.

When they returned to Millis, Guerra was driving, Frank Espino was seated next to him in the front seat, and the defendant was sitting in the back seat behind Frank Espino. Israel Espino also was in the back seat behind Guerra. The defendant was armed with the gun he obtained. He never saw another weapon. In a statement to police, the defendant said that, on the ride to Millis, he saw Israel Espino touching his coat pocket and assumed that pocket was where the money was.

---

[1]The defendant testified that he wanted to "get some transportation, preferably a van."

Just as they pulled onto the dark driveway that led to 159 Forest Road, where the defendant had lived for six years, Guerra heard a loud noise. He thought he "blew a tire or something." However, the noise he heard was the sound of Israel Espino being shot in the head. Espino's mortal wound was a contact wound, indicating that the defendant had his gun pressed against Espino's head.

Immediately, Guerra was hit in the back of the head with another bullet which grazed him and went through the car's roof. Without recounting every detail, it appears that one or both of the men in the front seat turned around and tried, unsuccessfully, to wrest the gun from the defendant. The defendant emptied his gun, firing at Guerra and Frank Espino. In addition to the gunshot wound to the back of his head, Guerra was shot in the face and in the left arm. Frank Espino's left shoulder was shattered from a gunshot. The defendant told police that he had six additional bullets in his pocket and was concerned that the other two victims were not dead. At trial, the defendant admitted he received no injury, although as discussed below, he claimed he was punched.

Frank Espino managed to get out of the car. He ran and hid in the woods for a while, eventually making his way to a house for help. Guerra's wounds rendered him unconscious.

The defendant got out of the car, went around to Israel Espino's side of the car and opened the door. Israel Espino's body fell out of the car. The defendant searched through Espino's coat pocket and took approximately $3,500.[2] The defendant heard Guerra moaning.

Guerra regained consciousness and saw the defendant dragging Israel Espino's body away from the car, into the woods. Then he saw the defendant begin to return to the car. Guerra noticed the defendant's gun on the seat and tried to fire at the defendant, but the gun was empty. The car was still running and Guerra drove away with the back passenger door open. Guerra hit a wall and a tree in the process of escaping. He eventually made his way to a gasoline station and police were called.

The defendant hid in the woods for a while and, early the

---

[2]Frank Espino testified that he also had approximately $3,500 on his person that evening, but denied he was financing the drug deal.

next morning, called a friend. He told her something went wrong with his plan, and asked her to pick him up and to bring a change of clothes. When the friend and her companion picked him up, she noticed red stains on the front of his pants. The defendant told her to speak up because "Five gunshots in a car doesn't help." The defendant changed his clothes, weighted his pants down with rocks and threw them in a river. The defendant showed the friend a wad of cash and told her to feel it.

After stopping for breakfast and to buy a small amount of marijuana, the defendant's friend took him to a motel in Yarmouth where she rented a room for him in her name. The defendant bought a van. See note 2, *supra*. He left the motel when the same friend telephoned to tell him that he was wanted by the police. The defendant was arrested when he turned up in his van near his girl friend's rehabilitation facility on the prearranged day.

The defendant gave a statement to police and testified at trial. At trial, he admitted to most of the facts in the case. He admitted that everything he did was in furtherance of his plan to get his girl friend and leave town. However, the defendant testified that even though he brought a loaded gun to the scene, he brought it for protection and to frighten the men.[3] He also testified that when he realized that three men were going to accompany him back to Millis, he abandoned his plan for robbery and decided that, when they arrived in Millis, he would jump out of the car and run into the woods and hide. He also testified that, when the car first pulled into the driveway at 159 Forest Road, he felt a punch on the side of his face and heard someone in the front seat yell, "Kill him."[4] He testified that he feared for

[3]The defendant testified that, even though he had a loaded gun, his initial plan was to wrestle the money away from Guerra, a man whom the defendant admitted was larger than he was at the time. The defendant claimed that he brought the gun after learning that the men might be armed.

[4]In his statement to police, the defendant stated that when they stopped, he grabbed Israel Espino in a headlock and attempted to get Espino to give him the money. The defendant stated that he then saw the two men in the front seat of the car turn back and start to grab him and that was when he took his gun out, aimed it at Israel Espino and fired. He stated he kept firing until the gun was empty.

his life and started firing. Although he admitted taking the money from Israel Espino's coat pocket in his statement to police (and to the friend who went to Millis to pick him up after he committed the crimes), at trial the defendant testified that he saw the money just lying there "on the rim of the car door." He also claimed he "got high" on the marijuana the men smoked earlier in the evening.

*Discussion.*

1. *Challenge to juror.* During jury selection, the defendant asked his defense attorney to exercise one of his peremptory challenges on a potential juror, the only African-American juror in the jury pool. When the judge asked the defense attorney for a neutral reason, defense counsel consulted with the defendant and told the judge that the next juror in line had a medical background and he wanted someone with a medical background. The judge stated that the defendant's concern was not "a neutral enough reason" to exclude the juror and could be met by challenging another juror. He also stated that a challenge to the only African-American juror was a "prima facie exclusion of a discrete group." The juror remained on the jury, and defense counsel objected. At sidebar, defense counsel agreed that there were no other potential African-American jurors in the court room. Moreover, the defendant told the judge that he was content with the jury and had participated in the jury selection process.

In affidavits submitted in support of his motion for a new trial, the defendant and his trial counsel stated that the reason the defendant wanted to challenge the juror was because the defendant believed that the juror was biased against him because she would not look him in the eye when she passed by the defense table and gave him a "negative" look when she first took her seat in the jury box. There is nothing in the record to indicate that anyone other than the defendant noticed this behavior. In any event, his defense attorney told him that he needed another reason and the defendant told his attorney about the next juror's medical background, which defense counsel communicated to the judge.

The defendant argues that the denial of this peremptory challenge is reversible error because the judge improperly reversed

the burden of justifying the peremptory challenge, and the very fact that the defendant communicated his reason to defense counsel, an officer of the court, means that a showing of prejudice is not required. *Commonwealth* v. *Green*, 420 Mass. 771, 776 (1995). The defendant also argues that defense counsel's failure to communicate the reason to the judge was ineffective assistance of counsel.

There was no error. It is true that peremptory challenges are presumed to be proper. *Commonwealth* v. *Curtiss*, 424 Mass. 78, 79 (1997), and cases cited. However, "a single peremptory challenge may be sufficient to rebut [that] presumption." *Commonwealth* v. *Garrey*, 436 Mass. 422, 428 (2002), citing *Commonwealth* v. *Curtiss*, *supra*. Cf. *Commonwealth* v. *Green*, *supra*. Where a venire contains "a paucity of African-Americans" a judge "has broad discretion to require an explanation without having to make the determination that a pattern of improper exclusion exists." *Commonwealth* v. *Garrey*, *supra* at 429. Here, the defendant was challenging the sole African-American juror in the venire. Requiring an explanation was within the judge's discretion.

Moreover, the defendant has not demonstrated that if his feeling that the juror was biased against him was brought to the judge's attention, the judge would have excluded the juror. In fact, the judge would have been warranted in rejecting the reason. *Commonwealth* v. *Maldonado*, 439 Mass. 460, 465 (2003) ("a juror's looks or gestures, or a party's 'gut' feeling should rarely be accepted as adequate because such explanations can easily be used as pretexts for discrimination"). Cf. *Commonwealth* v. *Barnoski*, 418 Mass. 523, 533-534 (1994) (exclusion of juror, in part, for demeanor and dress). Accordingly, it was not ineffective assistance of counsel for trial counsel not to bring the matter to the judge's attention. His affidavit sheds no light on the reason he told the defendant he would need another explanation.

2. *Jury instructions.* The defendant asserts numerous errors in jury instructions and argues that, cumulatively, they constitute reversible error. We consider each in turn.

a. *Instruction on specific intent.* Although the defendant does not argue that the jury instruction the judge gave concerning intent as it related to each specific crime for which the defendant was indicted was erroneous, he does argue that the judge's instruction on specific intent relieved the prosecution of the burden to prove the scienter elements of murder and the other crimes charged, by improperly focusing on the act rather than the desire to bring about a certain result.[5]

In instructing the jury on armed robbery, the judge initially stated:

> "The law recognizes two kinds of intent. General intent and specific intent. General intent is similar to an unconscious act or a reflex action, if you will, such as sitting down in a chair or walking upstairs . . . . Specific intent requires a conscious decision. It involves concentrating or focusing the mind before the desired act is committed. In other words, an act performed with specific intent is a conscious one, done with the determination of the mind to commit the act."

There was no objection.

"[T]o the extent that the jury could have understood general intent to be a reflex action, [this instruction] was error." *Commonwealth* v. *Gunter*, 427 Mass. 259, 269 (1998). However, in his instruction concerning general intent as it related to the crime of assault and battery by means of a dangerous weapon the judge stated, "It requires only general intent to do the act causing the injury or unjustified, intentional touching . . . it's done when it's done." Moreover, the instruction in this case is different from the instruction given in *Commonwealth* v. *Sibinich*, 33 Mass. App. Ct. 246, 248 (1992), where the judge prefaced his discussion of general intent with, "Everybody is presumed to intend what he or she did in fact do . . . ." Having reviewed the instructions related to the crimes that required specific intent, we conclude that any error or confusion created

[5]We reject the defendant's contention, made without elaboration or citation to authority, that the error "blurr[ed] the essential distinctions" between the crimes of which he was accused.

by the judge's instructions did not create a substantial likelihood of a miscarriage of justice.[6]

b. *Malice instruction.* The defendant argues that the judge made three errors in his instructions on malice and that these errors required the reversal of all the defendant's convictions based on malice aforethought. There were no objections.

(i) Concerning malice, the judge stated, "malice aforethought refers to a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful and unjustifiable motive." This was error. *Commonwealth* v. *Serino,* 436 Mass. 408, 417 (2002). However, the jury convicted the defendant of murder in the first degree on theories of deliberate premeditation and felony-murder. Concerning deliberate premeditation, the judge correctly instructed the jury on the first prong of malice that malice "may be proved by evidence of any unexcused specific intent to kill." Accordingly, the error did not create a substantial likelihood of a miscarriage of justice.[7] *Id.* (instructions that contained an obsolete definition adequately conveyed meaning of malice where proper instruction also given). Moreover, proof of malice is not required for a conviction of felony-murder, as the felony-murder rule is one of constructive malice. See, e.g., *Commonwealth* v. *Tevlin,* 433 Mass. 305, 314 (2001), citing *Commonwealth* v. *Matchett,* 386

---

[6]Concerning specific intent for armed robbery, the judge instructed the jury that the Commonwealth was required to "prove beyond a reasonable doubt that the defendant robbed, stole, or took property with the specific intent to steal it . . . to deprive the victim of it permanently .˙. . that the defendant intended to deprive the victim of his property permanently."

Concerning specific intent for premeditated murder, the judge instructed the jury that in order to find deliberate premeditation, the Commonwealth had to prove beyond a reasonable doubt "that the defendant thought before he acted . . . that [he] formed a plan or resolution, no matter how simple, to murder after deliberation."

Concerning specific intent for assault with intent to murder, the judge instructed the jury that the Commonwealth must show that the "defendant . . . possess[ed] an actual subject[ive] intent to kill."

Concerning specific intent for armed assault with intent to rob the judge instructed the jury that the Commonwealth must prove beyond a reasonable doubt "that the defendant possessed a specific or actual intent to rob."

[7]Evidence of the contact gunshot wound to the murder victim's head did not raise a substantial issue concerning malice. See *Commonwealth* v. *Serino,* 436 Mass. 408, 417 (2002).

Mass. 492, 505-507 (1982) (intent to commit felony serves as malice necessary for murder).

Moreover, the error in the malice instruction does not apply to the element of malice as it pertains to armed assault with intent to murder the other two victims because the judge gave a correct malice instruction. He properly discussed the elements the Commonwealth had to prove. See, e.g., *Commonwealth* v. *Nardone*, 406 Mass. 123, 130-132 (1989), quoting *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985) ("malice, as an element of assault with intent to murder, has a very specific meaning . . . merely the 'absence of justification, excuse, [or] mitgation' ").

(ii) The defendant argues that the judge's instruction that "[t]he jury may infer, though it is not required to do so, that a person intends the natural and probable consequence of an act that is knowingly done," shifted the burden of proof of malice to the defendant. This argument is without merit. The instruction was correct. *Commonwealth* v. *Rivera*, 50 Mass. App. Ct. 532, 537-539 (2000) (no error where the "term presumption did not appear"); *Commonwealth* v. *Repoza*, 382 Mass. 119, 134 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987) (error for judge to equate malice implied with malice presumed).

(iii) Equally without merit is the defendant's argument that the judge's instruction that, "[w]hen a killing is caused by the intentional use of a dangerous weapon, malice may be inferred, unless by the circumstances, the jury considers that it has not been proven," was erroneous. This instruction made clear that the inference was permissive rather than mandatory. *Commonwealth* v. *Guy*, 441 Mass. 96, 107-108 & n.13 (2004), and cases cited. Moreover, the judge also stated, "You are not required to draw such an inference if you are not satisfied that there is evidence to support it. You may not draw an inference of malice if the use of a dangerous weapon was unintentional or accidental."

c. *Manslaughter instructions.* The defendant also claims that the judge erred in his instructions on manslaughter.

(i) The defendant argues that the jury instruction on voluntary manslaughter that included the phrase "when there is no time to deliberate" as part of the explanation of sudden transport of

passion, created a risk that the jury were misdirected to consider whether there was time to deliberate rather than to focus on whether the killing occurred in the heat of sudden affray or combat. There was no error. The absence of time to deliberate is consistent with manslaughter. See *Commonwealth* v. *Jefferson*, 416 Mass. 258, 262 (1993) ("no time to deliberate" language in manslaughter instruction).

(ii) The defendant next asserts that the judge did not make it clear that the Commonwealth has the burden to show the absence of provocation beyond a reasonable doubt. The judge gave a proper instruction. However, the correct instruction was sandwiched between two erroneous instructions whereby the judge reversed the burden of proof.[8] We conclude that these errors did not create a substantial risk of a miscarriage of justice. The jury convicted the defendant of armed robbery, which means that they must have rejected the defendant's testimony that he abandoned his plan to commit armed robbery and only fired his gun after he was punched in the face. *Commonwealth* v. *Randolph*, 438 Mass. 290, 301 (2002) (erroneous provocation charge not prejudicial where jury convicted defendant of armed assault in a dwelling and assault and battery by means of dangerous weapon thus showing that they believed, beyond a reasonable doubt, the Commonwealth's witnesses).

(iii) The defendant also argues that similarities in the manslaughter and malice instructions, in conjunction with the

---

[8]In discussing the elements of voluntary manslaughter, the judge stated that among the things the Commonwealth had to prove beyond a reasonable doubt was that "the defendant injured a victim as a result of a sudden combat or in the heat of passion or using excessive force in self-defense." This was error. The judge should have said that the Commonwealth had to prove beyond a reasonable doubt that the defendant did not act on reasonable provocation. See *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998), citing *Commonwealth* v. *Boucher*, 403 Mass. 659, 661 (1989).

Shortly after he correctly instructed the jury concerning the Commonwealth's burden of proving that the defendant did not act in the heat of passion, the judge erroneously stated, "[I]f, after considering all of the evidence, you conclude that the Commonwealth has proved beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat against the defendant . . . then you must find the defendant guilty of voluntary manslaughter." See *Commonwealth* v. *Acevedo, supra* at 717.

judge's instruction that the Commonwealth was entitled to the highest charge proved, had the effect of eliminating manslaughter from the jury's consideration.[9] Considered as a whole, this instruction was not erroneous. The judge simply referenced malice as a way to distinguish manslaughter from murder. The judge properly instructed the jury that mitigating circumstances could reduce murder to manslaughter even with an intent to kill and that what distinguishes manslaughter from murder is "not the absence of intent, but rather the absence of malice aforethought." See *Commonwealth* v. *Vizcarrondo,* 427 Mass. 392, 396 (1998), *S.C.,* 431 Mass. 360 (2000) ("Malice is what distinguishes manslaughter from murder").

d. *Armed robbery instruction.* The judge erred in his instruction to the jury on armed robbery. He stated that if "the defendant [*sic*] proves, beyond a reasonable doubt that the defendant used or disposed of the property in a manner that showed that he did not care whether or not the owner recovered possession, it has demonstrated a specific intent to steal." Indifference concerning whether an owner recovers possession of his property does not automatically prove specific intent to steal. *Commonwealth* v. *Moore,* 36 Mass. App. Ct. 455, 457 (1994). However, this error did not create a substantial likelihood of a miscarriage of justice because, in this case, whether the defendant intended to steal the money was not a live issue at trial. In fact, the defendant conceded that he planned to rob the victims and that he took the money after shooting the victims (albeit in the form of larceny). The sole defense was that the defendant abandoned his plan once three people accompanied him to Millis and that he only shot the victims after being punched in the face and hearing someone say, "Kill him." Thus, the issue for the jury was not intent to steal (which is part of larceny), but whether the defendant used force to effectuate the taking. See *Commonwealth* v. *Christian,* 430 Mass. 552, 558 (2000) (difference between robbery and larceny, a lesser

---

[9]The defendant points to the instruction on manslaughter as a homicide "committed unlawfully without legal excuse or justification," and compares it to an earlier instruction that "malice is . . . any unlawful and unjustifiable motive."

included offense of robbery, is whether the property was taken without threat or use of force).[10]

e. *Intoxication instruction.* The defendant asserts various errors in the intoxication instructions. We need not address them because the defendant was not entitled to an intoxication instruction. The judge gave the instructions simply in an abundance of caution. There was no evidence of the requisite debilitating impairment. The defendant and the two surviving victims testified that they smoked marijuana while they were in Millis the first time, but there was no evidence "to support the inference that, at the time of the killing, [the defendant was] impaired [in his] ability to form any requisite criminal intent." *Commonwealth* v. *Moses,* 436 Mass. 598, 603 (2002). Moreover, the fact that the defendant had a "clear recollection of events at trial belies his claim on appeal that he was debilitated at the time." *Id.* See *Commonwealth* v. *Torres,* 420 Mass. 479, 492 (1995) (where defendant not entitled to self-defense instruction, any error harmless).

f. *Tenor of jury instructions.* The defendant argues that the judge made a number of improper comments during his instructions to the jury and, therefore, wrongfully influenced the jurors by invading their function.

(i) The defendant argues, without citation to authority, that in his instruction on circumstantial evidence the judge's statement that, "[c]ommon experience shows us that few crimes are committed in the presence of many witnesses," was improper.[11] The defendant's argument is without merit. We agree with the Commonwealth that, in context, this statement was directed at explaining the law's need to consider circumstantial evidence.

(ii) Relying on *Commonwealth* v. *Groce,* 25 Mass. App. Ct. 327 (1988), the defendant next argues that the judge erred in giving the consciousness of guilt instruction because it was

---

[10]Because we conclude that the error in the armed robbery instruction did not create a substantial likelihood of a miscarriage of justice, it follows that we need not address the defendant's challenge to his conviction of felony-murder based on those instructions.

[11]He also argues that there were a "great number of witnesses who testified for the prosecution," and, therefore, it was tantamount to telling the jury that the judge believed the case against the defendant was stronger than most cases. The two surviving victims were the only two witnesses to the crimes.

undisputed that a crime occurred or that the defendant was the one who did it. The defendant's reliance on the *Groce* case is misplaced because identification was not at issue in this case.[12] The defendant's flight and weighting down his pants before throwing them in a river is evidence of consciousness of guilt, warranting the instruction. See generally *Commonwealth* v. *Carrion*, 407 Mass. 263, 276-277 (1990), and cases cited. Moreover, there was no error in the instruction itself, nor does the defendant so argue. The judge gave the requisite admonition that one cannot be convicted on such evidence alone. See *Commonwealth* v. *Clark*, 20 Mass. App. Ct. 392, 395 (1985). There was no error.

(iii) The defendant next argues that the consciousness of guilt instruction improperly used the defendant's own behavior in the explanation. Defense counsel objected. There was no error. The defendant has not argued that the facts the judge used misstated the evidence.[13] In addition, a trial judge may "state the evidence and discuss the possible inferences of fact that may be drawn from it." *Commonwealth* v. *Polian*, 288 Mass 494, 499 (1934). See *Commonwealth* v. *Ferguson*, 365 Mass. 1, 10-11 (1974) (within discretion of trial judge to determine "what parts of the evidence should be referred to").

(iv) The defendant also argues that the judge's instruction that a defendant's expression of regret would not negate malice, gave the impression that he believed the defendant was guilty of murder. There was no error. The defendant cites to no authority to support his argument. Moreover, a defendant's state of mind at the time of a crime is the relevant inquiry. See generally *Commonwealth* v. *Garrey*, 436 Mass. 422, 437-438 (2002).

3. *Armed robbery conviction.* The defendant argues that, because the jury found him guilty of felony-murder, the armed robbery conviction must be set aside as duplicative. The conviction is not duplicative because the jury also convicted him of

---

[12]In any event, there was a question whether the crime of armed robbery occurred.

[13]We also reject, as without merit, the defendant's argument, made without citation to authority or reference to more than one instance in the record, that the judge's allegedly "numerous" examples that contained facts "close to the facts of this case subtly communicated" that the judge believed that certain elements had been established by the prosecution.

murder in the first degree based on deliberate premeditation. *Commonwealth* v. *Brum,* 438 Mass. 103, 104 n.1 (2002), quoting *Commonwealth* v. *Jackson,* 428 Mass. 455, 467 (1998).

4. *Restraints.* The defendant argues that there is the possibility that members of the jury may have looked out a court room window and seen the defendant being brought into the court house in restraints. He argues that seeing the defendant restrained could have prejudiced the jurors. There was no objection at that time or at any other time during trial.

The defendant has not shown that any juror actually saw him in shackles. Even if a juror did see the defendant in shackles in this case, there was no substantial likelihood of a miscarriage of justice because, in an attempt to show that the victims were dangerous, defense counsel elicited testimony from the defendant that he was transported to an arraignment in the company of eight officers, and that he was wearing handcuffs and a bullet-proof vest. Moreover, the judge gave strong presumption of innocence instructions and told jurors that they were to decide the case on the evidence alone.

5. *G. L. c. 278, § 33E, review.* The defendant argues G. L. c. 278, § 33E, relief is warranted because of cumulative errors at trial. He also argues that the weight of the evidence does not support a conviction of murder in the first degree; therefore, we should reduce the conviction either to murder in the second degree or to manslaughter. Trial errors have been discussed and need not be repeated here. We have reviewed the entire record and find that the evidence overwhelmingly supports the jury's verdicts. Accordingly we decline to exercise our power under G. L. c. 278, § 33E.

6. *Denial of motion for a new trial.* All of the issues that were addressed in the denial of the defendant's motion have been discussed. The judge did not improperly deny the motion.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*