# United States Court of Appeals
## For the First Circuit

No. 14-1953

DARRYL SCOTT,

Petitioner, Appellant,

v.

BRUCE GELB,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Barbara J. Sweeney, for appellant.
Thomas E. Bocian, Assistant Attorney General, Criminal
Bureau, with whom Maura Healey, Attorney General of Massachusetts,
was on brief, for appellee.

January 13, 2016

TORRUELLA, **Circuit Judge**.  Darryl Scott, petitioner-appellant, contests the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Scott, who is African-American, argues that Massachusetts state courts unreasonably applied Batson v. Kentucky, which held that the Equal Protection Clause prohibits prosecutors from challenging potential jurors on the basis of race.  476 U.S. 79, 89 (1979).  After careful consideration, we affirm the district court's denial of habeas corpus relief.

## I.  Background

Petitioner Darryl Scott was convicted of murder in the first degree, two counts of armed assault with intent to kill, assault with a dangerous weapon, and "various firearms offenses" by a jury in the Massachusetts Superior Court ("Superior Court") following the shooting death of Nabil Essaid in December 2002 and an attempt to evade police in February 2003.  Commonwealth v. Scott, 977 N.E.2d 490, 493 (Mass. 2012).  The Massachusetts Supreme Judicial Court ("SJC") has ably detailed the events leading to these charges as they could have been found by the jury, id. at 494-97, and they do not bear restatement here.  The sole issue before us concerns the jury selection proceedings in the Superior Court.

## A. Jury Selection in the Superior Court

Jury selection took place over two days, April 7 and 10, 2006. On the first day of jury selection, the prosecutor sought a peremptory challenge against Juror No. 5-16, an African-American man. Defense counsel objected under Commonwealth v. Soares, 387 N.E.2d 499, 511-12, 515-16 (Mass. 1979), which bars the use of peremptory challenges to "exclude members of discrete groups." Id. at 516. The judge then asked the prosecutor, "Why?" The prosecutor cited Juror No. 5-16's responses to the court's inquiry about concerns over the length of the trial -- namely, that Juror No. 5-16 had an upcoming job interview and was expecting a child that month. The judge responded that Juror No. 5-16 was "one of the few black males in the room," adding, "[t]here's no difference between him and anyone else that's been up here as a juror, other than the fact that he's going to have a child." The prosecutor tried once more: "Your Honor, the other consideration, seemingly he didn't want to be here." The judge replied, "Nobody wants to be here. None of those people seated over there wants to be here. I'm not going to give you that." The judge then seated Juror No. 5-16.

On the second day of jury selection, the prosecutor challenged Juror No. 10-10, an African-American woman, and Juror No. 11-10, a Latina. Each time, defense counsel objected to the

challenge under Soares. When objecting to the prosecutor's challenge to Juror No. 10-10, defense counsel noted that she was "the third or fourth person of color, the fourth person of color the Commonwealth has challenged." The judge responded that he did not allow one of these challenges -- the challenge to Juror No. 5-16 -- and for "[t]he others, there were neutral reasons . . . . In this county, they challenge everybody under twenty-five, thirty, whatever." The judge then asked the prosecutor for a reason for the challenge; the prosecutor did not give a reason but replied that there were a "number of women of color" whom he did not challenge and who were seated, indicating that there was "no pattern." The prosecutor acknowledged the judge's decision to seat Juror No. 5-16 over his challenge "as a male," then reiterated, "[b]ut there are a number of women of color who were seated on the jury yesterday." The judge permitted the prosecutor's challenge and noted defense counsel's objection.

Defense counsel opposed the challenge to Juror No. 11-10 on the grounds that "[s]he's a Hispanic female, member of the minority community." The prosecutor responded by again denying the existence of a "pattern" and noting that Juror No. 11-10 worked at a school where a man whom the prosecutor was trying for murder was employed. When asked, Juror No. 11-10 stated that she did not know the man being prosecuted. The prosecutor withdrew the

challenge, and the judge seated Juror No. 11-10.  Scott was convicted of murder in the first degree and related offenses.  The Superior Court subsequently denied his motion for a new trial; Scott then filed an amended motion for a new trial which was also denied.

**B.  Appeal to the Massachusetts Supreme Judicial Court**

On appeal to the SJC, Scott argued, inter alia, that the Superior Court erred by allowing the prosecutor's peremptory challenge of Juror No. 10-10.[1]  Scott, 977 N.E.2d at 497-99.  The SJC began its opinion by observing that "[p]eremptory challenges are presumed to be proper."  Id. at 498 (citing Commonwealth v. Maldonado, 788 N.E.2d 968, 971 (Mass. 2003)).  That presumption of propriety can be rebutted, the SJC noted, by demonstrating that "(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership."  Id.

The SJC outlined the process for determining whether a peremptory challenge is improper under Massachusetts law, explaining that "the judge must make an initial finding as to whether the opposing party has made a prima facie showing that the

---

[1]  Scott also raised three other claims of error in his appeal to the SJC; those other claims are not relevant to our analysis here. Scott, 977 N.E.2d at 493-94.

-5-

use was improper." Id. Next, "[i]f the judge concludes that the opposing party has established a prima facie case that the use was for a discriminatory purpose, the burden shifts to the party seeking to exercise the challenge to provide a 'group-neutral' explanation for that challenge." Id. at 498-99. Finally, "[t]he judge must then determine whether the reason provided is 'bona fide' or a 'sham' offered to avoid admitting to group discrimination." Id. at 499. The SJC stated that ultimately "[a] determination whether the explanation offered is adequate to establish a permissible, nondiscriminatory basis for the challenge is within the sound discretion of the judge, and will not be disturbed so long as there is support for the ruling in the record." Id. (citing Commonwealth v. LeClair, 708 N.E.2d 107, 115 (Mass. 1999)).

The SJC noted that a challenge to "a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety" where the venire contains few such individuals. Id. (quoting Commonwealth v. Fryar, 610 N.E.2d 903, 908 (Mass. 1993)). Moreover, it acknowledged that there are some circumstances in which a judge, by asking for a reason for the prosecutor's challenge, may have "implicitly found that a defendant has made a prima facie showing that the challenge was improper." Id. (citing Commonwealth v. Calderón, 725 N.E.2d

-6-

182, 185 (Mass. 1997)).  In certain situations, however, "[w]here a venire contains a paucity of African-Americans, a judge has broad discretion to require an explanation without having to make the determination that a pattern of improper exclusion exists."  Id. (quoting Commonwealth v. Van Winkle, 820 N.E.2d 220, 227 (Mass. 2005)).

Regarding Juror No. 10-10, the SJC found that the Superior Court judge did not supply a race-neutral explanation by mentioning the "under thirty" reasoning.  Id.  The SJC noted that the age remark "was made before he asked the prosecutor for a reason, and after the judge had pointed out that either there had been race-neutral reasons for earlier peremptory challenges, or that, in one instance, he had rejected the challenge and seated the male African-American juror."  Id.  The court reasoned that

> [b]y not requiring the prosecutor to provide a reason
> for the challenge after his initial statement that there
> was no pattern of discrimination, the judge plainly
> accepted the prosecutor's assertion, unchallenged by the
> defendant, that a number of African-American women . . .
> had been seated without challenge on the previous day,
> and that there was no pattern of discrimination, thus
> concluding that the defendant had not met his burden of
> establishing a prima facie case.

Id.  The SJC concluded that it could not say that it was an abuse of discretion to allow the peremptory challenge to Juror No. 10-10 because defense counsel did not object to the argument that three African-American jurors had already been seated.  Id.

-7-

Scott then filed a petition for habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the District of Massachusetts ("district court") alleging, again inter alia, that his state court convictions were contrary to, or constituted an unreasonable application of, clearly established federal law in Batson.[2]  Scott v. Gelb, No. 13-10306, 2014 WL 3735914, at *1, *8-10 (D. Mass. July 28, 2014).  The district court denied the petition, but granted a certificate of appealability. Id. at *13.

## II.  Analysis

### A.  Standard of Review

We review the district court's decision to deny habeas relief de novo.  Sánchez v. Roden, 753 F.3d 279, 293 (1st Cir. 2014).  "Our de novo review encompasses the district court's own 'determination of the appropriate standard of review of the state court proceeding.'"  Id. (quoting Zuluaga v. Spencer, 585 F.3d 27, 29 (1st Cir. 2009)).  The district court's opinion is not entitled to deference.  Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006).

---

[2]  As with his appeal to the SJC, Scott also raised a number of other issues in his petition, including prosecutorial misconduct, ineffective assistance of counsel, and the failure of the trial judge to provide a jury instruction regarding defense of another. The district court granted a certificate of appealability only as to his Batson claim.

Rather, this Court "determine[s] whether the habeas petition should have been granted in the first instance." Sánchez, 753 F.3d at 293.

## B. Antiterrorism and Effective Death Penalty Act Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Hodge v. Mendonsa, 739 F.3d 34, 41 (1st Cir. 2013); Zuluaga, 585 F.3d at 29 ("When a habeas claim has been adjudicated on its merits in state court, [AEDPA] mandates highly deferential federal court review of state court holdings.").

An adjudication is "'on the merits' giving rise to deference under § 2254(d) of AEDPA, 'if there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Yeboah-Sefah v. Ficco, 556 F.3d

53, 66 (1st Cir. 2009) (quoting Teti v. Bender, 507 F.3d 50, 56-57 (1st Cir. 2007)).  "[A] state-court adjudication of an issue framed in terms of state law is nonetheless entitled to deference under section 2254(d)(1) as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights."  Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009).

Here, we find the SJC analyzed Scott's Batson claim using state law standards that were at least as protective as the federal standard, entitling that court to deference under 18 U.S.C. § 2254(d)(1).  Id. at 426.  In its opinion, the SJC cited and relied upon both Maldonado, based in part on the standard set in Soares, and Fryar, which together ensure essentially the same protections as the standard set by Batson and its progeny.  Scott, 977 N.E.2d at 498-99; see Caldwell v. Maloney, 159 F.3d 639, 650 n.11 (1st Cir. 1998) ("Because the judge conducted an inquiry which was virtually identical to a Batson inquiry . . . and because the holding of Soares is quite similar to the holding of Batson, we do not accord the trial judge's findings any less of a presumption of correctness . . . ." (citations omitted)).[3]  As such, we review the SJC's decision under AEDPA's deferential standard.

_____

[3]  While the standard in Maldonado alone may fall short of that in Batson, in that it states there must be a "pattern of excluding

-10-

## C.  Clearly Established Federal Law

To determine whether a decision was contrary to Supreme Court precedent or constituted an unreasonable application of federal law under such precedent per § 2254(d), this Court "look[s] to the Supreme Court's holdings, as opposed to dicta, at the time the state court rendered its decision."  Hensley v. Roden, 755 F.3d 724, 730-31 (1st Cir. 2014) (citing González–Fuentes v. Molina, 607 F.3d 864, 876 (1st Cir. 2010)); see Thaler v. Haynes, 559 U.S. 43, 47 (2010).

The parties agree that Batson, in which the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race," 476 U.S. at 89, constitutes the "clearly established federal law" at issue.  So, too, do we.

Batson set forth a three-part test for determining whether a prosecutor's peremptory challenges against members of a group to which the defendant belongs constitute racial

---

members of a discrete group" in addition to a likelihood "that individuals are being excluded solely on [that] basis," 788 N.E.2d at 971 (emphasis added), the SJC also recognized the clarifying precept advanced in Fryar, consistent with Batson and its progeny, that a challenge to "a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety."  977 N.E.2d at 499 (quoting Fryar, 610 N.E.2d at 907).

-11-

discrimination.[4]  476 U.S. at 93-94, 98.  The Batson Court explained

the first prong, requiring the defendant to make a prima facie

case of discrimination, at length:

> the defendant first must show that he is a member
> of a cognizable racial group, and that the
> prosecutor has exercised peremptory challenges to
> remove from the venire members of the defendant's
> race.  Second, the defendant is entitled to rely on
> the fact, as to which there can be no dispute, that
> peremptory challenges constitute a jury selection
> practice that permits those to discriminate who are
> of a mind to discriminate.  Finally, the defendant
> must show that these facts and any other relevant
> circumstances raise an inference that the
> prosecutor used that practice to exclude the
> veniremen from the petit jury on account of their
> race.

476 U.S. at 96 (internal citations and quotation marks omitted);

see also Johnson v. California, 545 U.S. 162, 169 (2005) ("[A]

prima facie case of discrimination can be made out by offering a

wide variety of evidence.").  The second prong of the Batson test,

reached only if the first is satisfied, requires the prosecution

to respond.  "Once the defendant makes the requisite showing, the

burden shifts to the State to explain adequately the racial

exclusion."  Id. at 94.  The third prong falls to the court, as

after the defendant has made a showing and the prosecution has

---

[4]  The race of the defendant challenging the strike is no longer
required to bring a Batson claim.  See Powers v. Ohio, 499 U.S.
400, 402 (1991).

responded, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination."  Id. at 98.

While Gelb engaged 28 U.S.C. § 2254(d)(2) to some extent, and the district court suggested that both 28 U.S.C. § 2254(d)(1) and § 2254(d)(2) may be implicated, Scott, 2014 WL 3735914, at *10, Scott's phrasing of the issue and arguments are limited to 28 U.S.C. § 2254(d)(1) and, further, to "an unreasonable application of . . . Federal law."  Therefore, we, too, limit our consideration to § 2254(d)(1) and the question of "unreasonable application."

On appeal, this Court asks, as the district court did, "whether the Massachusetts Supreme Judicial Court's determination that a prima facie case of discrimination had not been made out was an 'unreasonable application' of Batson and its Supreme Court progeny."  Scott, 2014 WL 3735914 at *9.

**D.  An Unreasonable Application of Clearly Established Federal Law**

"[A] state court adjudication constitutes an unreasonable application [of clearly established federal law] 'if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  Hensley, 755 F.3d at 731 (quoting Abrante v. St. Amand, 595 F.3d 11, 15 (1st Cir. 2010)).  "For purposes of § 2254(d)(1), 'an

-13-

unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, to obtain federal habeas relief, a petitioner must show "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Id. at 103. "[I]n considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted." Snyder v. Louisiana, 552 U.S. 472, 478 (2008) (citing Miller-El v. Drake (Miller-El II), 545 U.S. 231, 239 (2005)).

We have elsewhere held that where a defendant makes a Batson objection on the basis of a "bare numerical argument," "[i]t [i]s the [defendant's] burden to bring forward other reasons and to flesh out the record with regard to the numerical claim." United States v. Girouard, 521 F.3d 110, 116 (1st Cir. 2008). "A defendant who advances a Batson argument ordinarily should 'come forward with facts, not just numbers alone.'" United States v.

Bergodere, 40 F.3d 512, 516 (1st Cir. 1994) (quoting United States v. Moore, 895 F.2d 484, 485 (8th Cir. 1990)). While one sustained Batson (or equivalent) challenge to a peremptory strike could in some instances raise an inference of discriminatory intent, that is not always the case. Instead, consistent with the Supreme Court's mandate in Snyder, we must consider other factors including but not limited to "the number of strikes involved in the objected-to conduct; the nature of the prosecutor's other strikes; and, as the 'capstone,' the presence of an alternative, race-neutral explanation for the strike." Girouard, 521 F.3d at 115-16 (internal citation omitted). Relevant to our inquiry here, other factors to which we may give some weight include the presence of other members of a certain group on the jury. See United States v. Escobar-de Jesús, 187 F.3d 148, 165 (1st Cir. 1999). Not every case will present every factor, and accordingly each Batson analysis will turn on the peculiarities of the proceedings below. What ultimately guides our review, however, is the principle that the Constitution affords a defendant the right be tried by a jury of the defendant's peers. To that end, Batson and its progeny help guarantee that a defendant receives a fair trial by protecting a potential juror's "right not to be discriminated on account of his [or her] race." Sánchez, 753 F.3d at 300.

Here, Scott argues, in essence, that the trial judge unreasonably applied Batson with respect to Juror No. 10-10 by stating a potential race-neutral reason for the prosecutor's challenge and failing to require an explanation from the prosecutor -- and that the SJC perpetuated that misapplication. We cannot agree.

The SJC reasonably concluded that the trial judge found that Scott had not met his burden to raise an inference of discrimination. Neither does the Superior Court judge's out-loud reasoning as to whether an inference of racial discrimination had been established following the challenge to Juror No. 10-10 establish such an inference. The judge's suggestion of a race-neutral explanation for the peremptory challenge came before his request for the prosecutor's reasoning, suggesting the judge had not determined that an inference of racial discrimination had already been established. Moreover, the judge could have, pursuant to Van Winkle, requested an explanation without satisfying the first Batson prong if there were a "paucity of African-Americans" in the venire. 820 N.E.2d at 227 (quoting Commonwealth v. Garrey, 765 N.E.2d 725, 734 (Mass. 2002)). That the judge permitted the prosecutor's challenge after the prosecutor argued that there was no pattern supports the conclusion that he had not found Scott

-16-

made a prima facie case of discrimination.  Scott, 977 N.E.2d at 499.

And the SJC reasonably upheld the trial court's ruling that no inference of discrimination had been raised.  Scott failed to adequately support his Batson claim at trial, claiming only that "this is the fourth person of color that the Commonwealth has challenged" and requesting his objection be noted rather than pushing back against the prosecutor's assertion that there was no pattern to the strikes.  Nor did Scott support his claim on appeal by reference to juror questionnaires, as in Sánchez, 752 F.3d at 285-86, or, for example, demographic information about the composition of the venire, the jurors seated, and the use and nature of the prosecutor's strikes overall.[5]  As such, Scott cannot surmount the deferential standard of review we apply in reviewing the SJC's decision on the merits under AEDPA.  28 U.S.C. § 2254(d).

The SJC did "consider all of the circumstances bearing on potential racial discrimination," Sánchez, 753 F.3d at 299, about which it had information.  Scott bore the burden of providing

---

[5]  Scott bears responsibility for submitting a complete record to support his claims.  This makes good sense, as "the ultimate burden of proof is on the party making the Batson challenge.  This means that the inadequacies in the record which preclude a determination of whether facts exist to support the prosecutor's reasoning works [to the petitioner's] disadvantage."  Caldwell v. Maloney, 159 F.3d 639, 654 (1st Cir. 1998).

enough information for the SJC to find an inference of racially discriminatory intent. See Girouard, 521 F.3d at 116-17. He failed to meet it. In this case, the SJC could rely upon only what the transcript reflected about the outcomes of prosecutor's prior strikes, the Superior Court judge's exchanges with the prosecutor and defense counsel, and on-the-record assertions about the demographics of jurors already seated; it touched on all of these factors. Scott, 977 N.E.2d at 499.

While perhaps suggestive, especially given the judge's comments as to "the only difference" between Juror No. 5-16 and others being impending fatherhood, the fact that the trial judge upheld the Soares objection to the prosecutor's challenge against Juror No. 5-16 does not itself establish an inference of racial discrimination. See Girouard, 521 F.3d at 115; Bergodere, 40 F.3d at 516.

Scott's failure to offer additional evidence supporting the inference of racial discrimination is why, despite Scott's attempts to draw parallels to Sánchez, that ruling is ultimately easily distinguishable. In Sánchez, the state court's "written opinion rejected Sánchez's racial discrimination claim in a single sentence that merely acknowledged the presence of other black people on the jury," an obviously "unreasonabl[e] appli[cation of] Batson's first part in that it wholly failed to consider all of

-18-

the circumstances bearing on potential racial discrimination." 753 F.3d at 299. In the instant case, the SJC made a similar reference to the prior seating of several women of color as a reason why the Superior Court judge did not infer a prima facie case, but it also considered all other available information bearing on whether an inference of racial discrimination had been raised. The state court in Sánchez, by contrast, actively ignored that a similarly situated white member of the venire was seated while a person of color was not. 753 F.3d at 303-04. Pointedly, as Sánchez itself noted, "[e]vidence of different treatment of similarly situated jurors was conspicuously absent in other cases in which we upheld a trial judge's determination that a defendant failed to make out a prima facie case." Id. at 304 n.19.

## III.  Conclusion

We therefore affirm the district court's conclusion that habeas be denied.

**Affirmed.**

-19-