# United States Court of Appeals
## For the First Circuit

No. 22-1652

FAGBEMI MIRANDA,

Petitioner, Appellant,

v.

STEPHEN KENNEDY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Susan J. Baronoff, with whom Baronoff Law Office was on brief,
for appellant.

Eva M. Badway, Assistant Attorney General of Massachusetts,
with whom Maura Healey, Attorney General of Massachusetts, was on
brief, for appellee.

January 3, 2025

**HOWARD**, **Circuit Judge**.  In June 2013, Fagbemi Miranda was convicted of first-degree murder in Massachusetts state court. At the jury trial, defense counsel's aim was to discredit the government's key witness, advancing the theory that Miranda's brother was instead responsible for the shooting.  Miranda, however, wanted to testify that he shot the victim but that it was in self-defense, so he should be acquitted -- a theory that trial counsel and the judge did not believe to be viable.  The issues in this habeas case stem largely from that disagreement in approach. Under the deferential standard of review we apply to state-court convictions on habeas review, we find Miranda's arguments to be unavailing and affirm.

### I.

### A.

The charges against Miranda stemmed from events that took place in the evening of October 10, 2005.[1]  Miranda and a man named Christopher Barros were engaged in an argument outside the house where Miranda lived with his family (the "Miranda home"), screaming and aggressively gesturing at one another in close proximity.  A third, unidentified man looked on.  Shortly before

---

[1] We primarily draw the facts of the October 10 altercation from the Massachusetts Supreme Judicial Court's decision affirming Miranda's conviction.  Commonwealth v. Miranda, 484 Mass. 799 (2020).  These are facts that "the jury could have found based on the Commonwealth's evidence." Id. at 800.  Details of Miranda's trial, including his testimony, are drawn from trial transcripts.

8:30 p.m., Miranda's younger brother, Wayne Miranda ("Wayne"), came out of the Miranda home and joined the argument. He then ran back inside and returned with a black handgun, which he pointed at Barros's forehead. Miranda tried to get the gun away from Wayne and push him back into the Miranda home, repeatedly yelling "no" and telling him to stop.

Barros ran across the street and into an open driveway alongside a nearby house. Wayne chased after him, and Miranda chased after Wayne, with the unidentified man following behind. When the brothers reached the end of the driveway, they halted near the garage, and after briefly exchanging words, Wayne passed the gun to Miranda. A neighbor who lived on the second floor of the house saw Miranda raise the gun and point it toward the fence on the far side of the yard. Two gunshots rang out. Another neighbor then saw both Miranda brothers and the unidentified man emerge from the driveway onto the sidewalk, where one of the brothers passed the gun to the other brother before going inside the Miranda home.

Police responded soon after and located Barros, who was unconscious, on the other side of the fence. No weapons were found on his person or nearby. He had been shot in the left arm and leg, and he was pronounced dead upon arrival at the hospital. The neighbor living in the house did not report what she had seen in the driveway and refused to make a formal statement. Based on

- 3 -

their initial investigation that night, police arrested and charged Wayne.

About 18 months later, police executed a search warrant at the neighbor's house, resulting in her arrest for trafficking cocaine in a school zone and related charges. She entered into a cooperation agreement with the government to avoid incarceration in exchange, in part, for truthful testimony about the October 10 shooting.

**B.**

In March 2008, Miranda was indicted for the murder of Barros, as well as assault and battery with a dangerous weapon and unlawful possession of a firearm. By 2011, Miranda and his first counsel disagreed about how best to approach the case. Miranda's counsel wanted to defend the case by attacking the neighbor's credibility, given the cooperation agreement and the fact that she was the only one who identified Miranda as the shooter. Miranda, however, insisted that he fired the gun in self-defense and wanted to testify to that effect. Miranda's counsel filed a motion to withdraw, which the judge granted. The same conflict arose with his second counsel. Miranda maintained that he did not want to "place the guilt" on Wayne. This time, however, the judge twice denied counsel's motion to withdraw, the second time in part because Miranda told the judge that he was not prepared to represent himself at that time.

At trial, these differences in desired approach persisted. Although Miranda's habeas petition challenges several aspects of his trial, we focus below on the facts relevant to the issue that we deem closest (though we ultimately conclude it lacks merit): counsel's failure to direct his testimony.

After the government rested at trial, defense counsel requested that he introduce Miranda to the jury and allow him to testify in narrative form instead of through direct examination. The judge granted that request. In narrative form, Miranda testified that he drove home after dinner, parked his car, and noticed Barros in an unfamiliar car parked across the street. In his telling, Miranda recognized Barros in the car and approached to greet him, but Barros got out of the car and punched him "for no apparent reason." Miranda testified that they then got into a shouting match, with Miranda seeking an explanation. After seeing the unidentified man then emerge from the passenger side of the car, Miranda continued, he felt that he was outnumbered and yelled for help from his brothers inside. He went on to state that Wayne, who knew there had been a lot of shootings in the neighborhood, came out with the gun to try to get them to go away. Moreover, Miranda added, Barros said to Wayne, "Mother-fucker, I'm going to kill you. Come at me with that, I'm going kill [sic] you." Miranda then recounted that Barros ran down a nearby driveway, kicked out a basement window of the adjacent house, and "went to go reach for

something."  Miranda testified that he then took the firearm from Wayne at the beginning of the driveway and followed Barros into the house's yard.  He thought he saw Barros on the other side of a fence, he continued, where "it looked like he's reaching."  So, in his telling, he shot at Barros's arm and leg to "disarm him and stop the mobility there, that's all," emphasizing that he did not intend to kill Barros.

The prosecutor cross-examined Miranda, during which Miranda again admitted to killing Barros but denied that he made a "conscious decision" to do so because "[e]verything [was] moving fast."  Miranda also explained that the driveway Barros ran down was located directly across from his house, so "if [Barros] would have came [sic] out of that driveway while [they] were walking in the house and started shooting," Miranda, Wayne, and his grandmother would have been in the line of fire.  Defense counsel did not conduct redirect examination or introduce any other evidence.

At the trial's conclusion, defense counsel delivered a summation that emphasized the jury's role in assessing witness credibility.  To do so, he made two arguments that each drew on that theme.  First, he criticized the credibility of the prosecution's witnesses, highlighting in particular why the neighbor's cooperation agreement with the government called the veracity of her testimony into doubt.  Second, he noted that the

jury could "credit everything Mr. Miranda said," "[t]ake it at face value," and nonetheless acquit him of first-degree murder in light of mitigating circumstances. Defense counsel concluded his remarks by asking the jury to evaluate the prosecution's evidence "piece by piece, witness by witness," rather than consider Miranda's testimony alone.

Miranda was ultimately convicted of first-degree murder with deliberate premeditation, assault and battery with a dangerous weapon, and unlawful possession of a firearm. He was sentenced to life in prison without parole.

After trial, Miranda filed a notice of appeal and a motion for a new trial. Following review in lower courts, the Massachusetts Supreme Judicial Court ("SJC") affirmed Miranda's convictions and the denial of his motion for a new trial. Commonwealth v. Miranda, 484 Mass. 799, 818, 836 (2020). Miranda filed a petition for a writ of certiorari in the United States Supreme Court, which was denied in November 2020. Miranda v. Massachusetts, 141 S. Ct. 683, 683 (2020).

Miranda then turned to the federal courts for habeas relief, filing a petition in the District of Massachusetts in October 2021. The district court denied the petition and dismissed the case in July 2022 but granted a certificate of appealability. Miranda v. Kennedy, 2022 WL 2953052, at *8 (D. Mass. July 26, 2022). We now review his petition on appeal.

- 7 -

## II.

Our review of the district court's denial of habeas relief is de novo. Scott v. Gelb, 810 F.3d 94, 98 (1st Cir. 2016). However, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "our review of state court legal and factual determinations is highly deferential." Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007). When assessing a claim that was adjudicated on the merits in state court, we "must defer to the state court determination unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Id. (quoting 28 U.S.C. § 2254(d)). This is a steep hurdle for Miranda to overcome. Even what we may deem an "incorrect" application of federal law may not be an "unreasonable" one. Scott, 810 F.3d at 101 (emphasis omitted) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). An "unreasonable application" of federal law exists when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Porter v. Coyne-Fague, 35 F.4th 68, 74 (1st Cir. 2022)

(alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). The application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). And an application is unreasonable "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 427 (quoting Harrington, 562 U.S. at 103).

As the district court concluded, Miranda's arguments do not clear this hurdle. He argues (1) that defense counsel's actions interfered with his right under McCoy v. Louisiana, 584 U.S. 414 (2018), to decide the objective of his defense -- namely, to not blame his brother for what he had done and to argue that he acted in self-defense; (2) that his Fourteenth Amendment right to due process was violated by the trial judge's refusal to instruct the jury on self-defense; and (3) that because Miranda was required to testify in narrative form without preparation, and because his counsel told the jury in closing argument that they need not credit Miranda's testimony, Miranda was deprived of his rights to testify and to effective assistance of counsel. All of these are either issues on which the SJC's rulings were correct or, at a minimum, issues on which fairminded jurists could certainly disagree. We briefly explain why as to each issue, but we go into more depth as

to the one issue that merits the closest attention: whether the failure of Miranda's counsel to prepare and direct his testimony amounted to ineffective assistance of counsel.

**A.**

Miranda first argues that his trial counsel interfered with his right to set the objective of his defense under McCoy, pointing to his counsel's presentation of a witness-credibility defense instead of the self-defense argument that Miranda advocated. The SJC disagreed with Miranda, holding that in this case "defense counsel and the defendant shared the same principal objective: outright acquittal" and that their disagreement was as to "what strategic and tactical approach should be used to achieve that end." Miranda, 484 Mass. at 822. Specifically, the SJC observed that "defense counsel did not concede the defendant's guilt over objection or alleviate the prosecution's burden of proof on any elements of the charges." Id. at 823. It thus found this case to be distinguishable from McCoy, which it described as a case in which "defense counsel's concession of guilt had interfered with his client's right to insist on his innocence." Id. at 822. We do not find that the SJC's reasoning was an unreasonable application of this principle from McCoy.

**B.**

Miranda's next argument takes aim at the state trial court, claiming that the trial judge's refusal to issue a jury

- 10 -

instruction on self-defense deprived him of his Fourteenth Amendment right to due process. On review, the SJC considered "whether there [was] any record evidence to support at least a reasonable doubt that" Miranda "actually and reasonably believed" that he was in imminent danger necessitating the use of deadly force, attempted to use "all proper means and reasonably available avenues of escape prior to" doing so, and only used the "level of force reasonably necessary." Id. at 810-11. We see no reversible error in the SJC's conclusion that Miranda was not entitled to a jury instruction on self-defense because "[he] had no reasonable basis for concluding that the victim was armed" and "had numerous opportunities to retreat and avoid the confrontation once the victim fled across the street." Id. at 811-12.

## c.

Finally, Miranda argues that his conviction is constitutionally defective because of purported violations of his rights to testify and to effective assistance of counsel. To make this argument, Miranda relies on two events at trial: his counsel and the court's decision to let him testify in an undirected narrative form without preparation and his counsel's suggestion to the jury in closing argument that they may discredit that testimony. The SJC found these arguments unavailing, and under the highly deferential framework of AEDPA, we cannot say they make out "clear error" with which no "fairminded jurist" could agree.

- 11 -

See White, 572 U.S. at 419; Strickland v. Goguen, 3 F.4th 45, 53 (1st Cir. 2021). We first address Miranda's arguments pertaining to his narrative testimony before turning to his arguments about counsel's closing argument.

**1.**

As an initial matter, it was not unreasonable for the SJC to conclude that the issue of Miranda's narrative testimony is properly analyzed under the Strickland v. Washington ineffective-assistance-of-counsel framework (which requires a showing of prejudice), 466 U.S. 668, 687 (1984), rather than the United States v. Cronic deprivation-of-counsel framework (which does not), 466 U.S. 648, 659 (1984). Under Strickland, an individual claiming ineffective assistance of counsel must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Cronic outlines an exception to that standard, presuming prejudice "if the accused is denied counsel at a critical stage of his trial." 466 U.S. at 659; see also id. at 659 n.25 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."). However, "the Cronic exception is exceedingly narrow" and applies only "where the defendant has demonstrated that 'the attorney's failure [was] complete.'" United States v. Theodore, 468 F.3d 52, 56 (1st

Cir. 2006) (alteration in original) (quoting Bell v. Cone, 535 U.S. 685, 696-97 (2002)). "In other words, 'the circumstances leading to counsel's ineffectiveness [must be] so egregious that the defendant was in effect denied any meaningful assistance at all.'" Id. (alteration in original) (quoting United States v. Griffin, 324 F.3d 330, 364 (5th Cir. 2003)). Other circuits have applied the Cronic exception when counsel slept through portions of a capital murder trial and when counsel sat silently throughout the entire trial. Id. (citing Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001) (en banc); Harding v. Davis, 878 F.2d 1341, 1345 (11th Cir. 1989)). We have held that it does not apply to cases involving "bad lawyering, regardless of how bad." Id. (quoting Scarpa v. Dubois, 38 F.3d 1, 13 (1st Cir. 1994)).

Miranda argues that his counsel's errors regarding his testimony amount to denial of counsel and therefore fall under this exception to the prejudice requirement. But the cases Miranda cites are consequentially unlike the situation here, where counsel continued to represent the defendant throughout the trial, advised him not to testify after explaining the law of self-defense to him, opted for the strategy of narrative testimony when the defendant persisted in his desire to testify, and objected to various questions on cross-examination. Cf. Ferguson v. Georgia, 365 U.S. 570, 571, 596 (1961) (holding that state law requiring narrative testimony deprived defendants of counsel). Given these

- 13 -

affirmative steps by Miranda's counsel to "subject the prosecution's case to meaningful adversarial testing," it does not follow that his counsel "entirely fail[ed]" to oppose his prosecution. Bell, 535 U.S. at 697 (quoting Cronic, 466 U.S. at 659). Rather, Miranda identifies "specific attorney errors" made by his counsel in the course of defending his case akin to those that the Supreme Court "[has] held subject to Strickland's performance and prejudice requirements." Id. at 697-98. Given the lack of any contradictory Supreme Court decision directly on point, we thus cannot conclude that the SJC unreasonably applied clearly established law in determining that this situation did not fall under Cronic. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (finding no unreasonable application where no Supreme Court decision "clearly establishes that Cronic should replace Strickland in this novel factual context").[2] We therefore proceed, as the SJC did, with applying the Strickland ineffective-assistance-of-counsel rubric.

_____

[2] In concluding that the issue of Miranda's testimony was "not structural" and instead "properly analyzed as an issue of ineffective assistance of counsel," the SJC, while citing to Cronic, did so only for the proposition that Strickland generally requires a showing of prejudice. See Miranda, 484 Mass. at 830 n.6. But we need not decide whether the SJC's determination "falls beyond the ambit of AEDPA," Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010), because even on de novo review, counsel's error does not fall under Cronic for reasons already explained.

- 14 -

Addressing the first step of Strickland, the SJC concluded that defense counsel had erred by failing to prepare Miranda to testify and by failing to direct his testimony during trial. Miranda, 484 Mass. at 828. The SJC analyzed the issue under Massachusetts Rule of Professional Conduct 3.3(e), which provides that counsel may not aid in construing false testimony if counsel knows that the defendant intends to perjure himself. Id. The SJC concluded that because counsel did not make a formal invocation of Rule 3.3(e), he did not indicate that he had made a "good faith determination that there was a firm basis in fact to conclude his client was about to perjure himself." Id. Absent that good faith determination, the SJC wrote, "counsel and the court should not have restricted the form of the defendant's testimony to an undirected narrative," "defense counsel should have prepared the defendant to testify," and "defense counsel then should have directed the defendant's trial testimony." Id. at 828-29. Thus, the SJC concluded that Miranda had established deficient performance by counsel, satisfying the first prong of Strickland. See 466 U.S. at 687.

Turning to the second Strickland prong, however, the SJC concluded that there was no prejudice based on this failure to

prepare and direct testimony.[3] <u>Miranda</u>, 484 Mass. at 831. This prong requires the individual to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The "defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case," only that there was a "reasonable probability" that it did. <u>Id.</u> at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. The SJC reasoned that because Miranda had no viable self-defense claim, "there was no likelihood that counsel's error prejudiced the defendant," "regardless of whether the testimony was presented in narrative or directed form." <u>Miranda</u>, 484 Mass. at 831. It noted specifically that "the defendant's armed pursuit of the victim through the alley and around the corner, conclusively established by the defendant's own

---

[3] More precisely, the SJC concluded that there was no "substantial likelihood of a miscarriage of justice arising out of the error." <u>Miranda</u>, 484 Mass. at 814. In assessing ineffective-assistance-of-counsel claims, the SJC applies this standard set forth by Mass. Gen. Laws ch. 278 § 33E, "which is more favorable to a defendant than are the Federal or State constitutional standards." <u>Commonwealth</u> v. <u>Mitchell</u>, 438 Mass. 535, 546 n.6 (2003). Given that this standard requires a lesser showing than prejudice, the SJC's conclusion that Miranda had not met this standard inherently encompassed the conclusion that Miranda had not met <u>Strickland</u>'s prejudice standard either. We therefore frame our discussion solely in terms of federal constitutional requirements.

testimony, compelled the verdict in the instant case." Id. at 831 n.47.

Miranda contends, however, that the SJC did not engage with his argument that counsel's errors impaired his chances for a lesser verdict of guilt, such as second-degree murder, even if it did not affect his chances of outright acquittal.[4] Under Massachusetts law, to find a defendant guilty of first-degree murder on a theory of deliberate premeditation, the state must show that "he purposefully caused [the victim's] death after reflection" and that there were no "mitigating circumstances." Commonwealth v. Andrade, 488 Mass. 522, 527-28 (2021); see also Commonwealth v. Vargas, 475 Mass. 338, 353 (2016) ("[M]alice and mitigating circumstances are mutually exclusive."); Commonwealth v. Dubois, 451 Mass. 20, 27 (2008) ("Murder with deliberate premeditation requires the Commonwealth to prove deliberation and premeditation, a decision to kill and a killing in furtherance of the decision."). Mitigating circumstances include heat of passion upon a reasonable provocation, heat of passion induced by sudden

---

[4] Even though "AEDPA constraints do not apply where a state court decision does not resolve a federal claim that was presented to it, and a habeas court will afford de novo review to the claim," Cooper v. Bergeron, 778 F.3d 294, 299 (1st Cir. 2015), Miranda does not argue for de novo review of this issue on appeal and instead assumes that the deferential framework of AEDPA applies. We need not decide the standard of review as to this issue, however, because we conclude, for reasons explained below, that Miranda's challenge would fail under either standard.

combat, and excessive use of force in self-defense or in defense of another.  Massachusetts Court System, Model Jury Instructions on Homicide: IV. Murder in the first degree (2018); see also Andrade, 488 Mass. at 528; Commonwealth v. Britt, 465 Mass. 87, 95-96 (2013).

There is no question that the prejudice prong of Strickland applies to situations in which a defendant might have achieved a lesser sentence or conviction in the absence of counsel's errors.  See, e.g., Lafler v. Cooper, 566 U.S. 156, 165 (2012) ("[A]ny amount of [additional] jail time has Sixth Amendment significance." (second alteration in original) (quoting Glover v. United States, 531 U.S. 198, 203 (2001))).  In other words, prejudice does not require showing that there is a reasonable probability that the defendant would have been fully acquitted, only that "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Being convicted of a lesser crime than first-degree murder certainly would have been a different result.  Miranda thus must show, at a minimum, a reasonable probability that his testimony would have led to a lesser conviction had it been properly developed and directed by counsel. He fails to do so.

Miranda first argues that "[d]efense counsel's very act of abandoning [him] to testify in narrative form . . . undermined [his] testimony" concerning both deliberate premeditation and

- 18 -

mitigating circumstances by "communicat[ing] to the jury that defense counsel did not want [him] to testify and did not credit his story." Given the speculative nature of this contention, however, we do not see how the format of the testimony -- on its own -- could give rise to a reasonable probability of a lesser conviction. Nor does Miranda cite any authority holding that it does.

Miranda also argues that because he was left to testify to these issues in narrative form without preparation, direction, or redirection, his testimony was disorganized and incomplete, leaving out key explanations. Miranda testified that he did not intend to kill Barros, that he believed Barros was reaching for a gun, that Barros threatened to kill his brother, and that Barros began the confrontation by striking Miranda. He contends that, with preparation and direction, he would have explained why he thought Barros had access to a firearm, why he believed it was not possible to retreat, or what he knew about Barros's prior acts of violence and involvement in the drug trade. In sum, he contends that he was "unable to explain fully the reasons for [his] state of mind at the time."

But Miranda did explain his state of mind during his testimony. He testified, albeit during cross-examination, that Barros chose not to run "south on Purchase [Street]," which was an "avenue[] of escape," and instead ran down a driveway that is "a

known stash spot" for weapons and drugs, because it was "the only driveway that's on that street with no gate."  And in response to the prosecutor's question about his decision not to retreat, he explained that he was "not making a conscious decision" at the moment because "[e]verything [was] moving fast" and he was worried that Barros had a weapon and "would [come] out of that driveway while we were walking in the house and start[] shooting."  Indeed, in articulating what he would have said had counsel prepared and directed him, Miranda largely repeats what he did say on the stand during his narrative testimony.[5]  And "[c]umulative evidence generally 'offer[s] an insignificant benefit, if any at all' for purposes of a Strickland claim."  Ayala v. Alves, 85 F.4th 36, 60 (1st Cir. 2023) (second alteration in original) (quoting Wong v. Belmontes, 558 U.S. 15, 23 (2009)).

Thus, even assuming that Miranda had a viable claim for second-degree murder or voluntary manslaughter, we see no reasonable probability that his testimony would have led to such

---

[5] The only additional explanation that Miranda proffers for his state mind on appeal -- on top of what he testified to above -- pertains to what he knew or heard about: (1) Barros's prior acts of violence and involvement in the drug trade; and (2) the tendency of "people in the drug trade" to "track people to their homes and assault them there if they have a beef with them." Given the explanations that Miranda did provide in his narrative testimony -- that Barros punched him for "for no apparent reason" and threatened to kill his brother -- we see no reasonable probability that this additional testimony would have led to a different outcome.

a conviction had it been properly developed and directed by counsel, and we certainly do not find the SJC's conclusion to the same effect to be unreasonable.

**2.**

As for Miranda's challenge to defense counsel's closing argument, the SJC concluded that it did not violate Miranda's rights to testify and to effective assistance of counsel. <u>Miranda</u>, 484 Mass. at 833-34. After reviewing defense counsel's closing argument, the SJC held that "he made proper argument in the alternative, providing the jury a path to an acquittal if the jury decided to believe that the defendant's testimony was designed to protect his younger brother, or to a verdict of less than murder in the first degree if the jury credited the defendant's testimony." <u>Id.</u> at 833. Although Miranda contends that the summation "heavily skewed toward" the defense counsel's preferred strategy, the SJC's conclusion to the contrary did not constitute an "unreasonable application" of federal law under our deferential standard of review. <u>See</u> 28 U.S.C. § 2254(d)(1).

**III.**

We therefore **<u>affirm</u>** the district court's denial of the petition.